**TRENTON TIMES CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 299–72.

United States District Court,
D. New Jersey.

July 18, 1973.

Lenox, Giordano, Devlin & Barlow, by Richard J. S. Barlow, Jr., Trenton, N. J., for plaintiff.

Herbert J. Stern, U. S. Atty., by Richard W. Hill, Asst. U. S. Atty., and Thomas R. Wechter, Dept. of Justice, for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

Plaintiff applies for review of the Internal Revenue Service refusal to deduct amounts paid by plaintiff for a group annuity contract established for its employees from plaintiff's 1964 and 1965 corporate income tax assessments. The parties have stipulated the facts and submit the matter for consideration without argument on cross-motions for summary judgment. Jurisdiction is properly alleged under 28 U.S.C. Sec. 1346, and plaintiff seeks return of the tax monies allegedly erroneously collected plus interest.

## STIPULATION OF FACTS

The following stipulation was entered into and filed with the Clerk of the Court.

"1. On May 1, 1935 plaintiff, Trenton Times Corporation, established an employer-employee contributory retirement and insurance plan which plan was funded by means of a group annuity contract issued by the Aetna Life Insurance Company. Subsequently, this plan received a favorable ruling from the Internal Revenue Service, by letter dated February 14, 1945, that it qualified under the pertinent Internal Revenue Code provisions in existence at that time.

2. The above plan was a Qualified Pension Plan which, under the pertinent provisions of the tax law did not require the intervention of a trust nor the presence of a trustee in order to qualify for favorable tax treatment. Thus, there was neither a trust nor a trustee which administered the plan.

3. Plaintiff corporation on April 17, 1964, as part of its employee benefit program set up a "Profit-Sharing Retirement Plan", which plan became ef-

fective May 1, 1964. This plan was a non-contributory plan but, like the 1935 retirement benefit plan, was funded by means of an annuity contract issued by the Aetna Life Insurance Company.

4. Management of plaintiff corporation considered the "Profit-Sharing Retirement Plan" as merely an adjunct to its already existent retirement plan and merely a means of increasing pension benefits previously provided for its employees, therefore, plaintiff did not believe formal approval of the "Profit-Sharing Retirement Plan" by the Internal Revenue Service was a requisite to the establishment of that plan. Furthermore, believing the "Profit-Sharing Retirement Plan" was a mere extension of benefits already established under the original retirement plan of 1935, plaintiff concluded that formal approval of the plan was not required nor did this additional plan require the establishment of a Trustee since the original retirement plan did not provide for the latter.

5. Pursuant to its commitments under the "Profit-Sharing Retirement Plan" as established, plaintiff corporation made contributions to that plan in the year 1964 in the sum of $47,000.00 and in the year 1965 in the sum of $50,000.00, and said contributions were paid directly to the Aetna Life Insurance Company and, thereafter, on the corporation's Federal income tax returns for the years involved deductions for the amounts stated were claimed.

6. Thereafter, the plaintiff corporation's tax returns for 1963 and 1964 were audited, certain disallowances were proposed, and the revenue agent's report was submitted for review.

This matter was then transferred to the pension plan section of the district revenue staff, and the district plan supervisor requested plaintiff submit certain documents for the purpose of determining whether the "Profit-

Sharing Retirement Plan" as established qualified under the Internal Revenue Code. One of the documents requested was a copy of the Trust Agreement; since no Trustee was named and no Trust Agreement was executed, as set forth above, plaintiff was not able to comply with that request. Shortly thereafter plaintiff was informed that the District Pension Plan supervisor had disallowed its contributions to the "Profit-Sharing Retirement Plan" for the year 1964 ($47,000.00) and for the year 1965 ($50,000.00).

7. By letter of April 28, 1966, plaintiff requested a ruling from the Internal Revenue Service, Pension and Profit-Sharing Division, and in support thereof submitted its argument by letter and memorandum dated September 12, 1966. The District Director responded by his letter of February 17, 1967; annexed thereto copy of conference report of January 24, 1967, and ruled that the contributions made by the plaintiff corporation in the years 1964 and 1965 to its "Profit-Sharing Retirement Plan" would be disallowed on the grounds that said plan failed to qualify under Sections 401(a) or 404(a)(3)(A) of the Internal Revenue Code.

8. As a result of the Director's ruling with reference to the necessity of establishing a Trust Agreement and Trustee under plaintiff's "Profit-Sharing Retirement Plan", and in order to protect its future contributions to the plan, plaintiff entered into a Trust Agreement and established a Trustee on December 20, 1966. This was done despite the fact plaintiff contended no such Trust Agreement or Trustee was required. The District Director notified plaintiff on May 20, 1968, that said plan was a qualified trust under Section 401(a) and exempt under Section 501(a) under the Internal Revenue Code.

9. On December 23, 1969, plaintiff filed its claim for refunds of taxes paid for the years 1964 and 1965 with

the Internal Revenue Service. Thereafter, on April 30, 1971, plaintiff corporation received a notification from the District Director of Internal Revenue that its refund claims had been disallowed.

10. The present litigation was instituted by plaintiff corporation on February 14, 1972, pursuant to the provisions of 18 [28] U.S.C. Sec. 1346(a) (1) to recover corporate income taxes paid to the United States Government in the sum of $12,462.85 for the year 1964 and the sum of $12,668.31 for the year 1965."

## THE NECESSITY OF A TRUST

■ Plaintiff maintains that the "Profit-Sharing Retirement Plan" was merely an extension of the old plan created in 1935 and approved in 1945 and since the old plan did not require approval or an intervening trust, the new one does not either. This argument has a superficial appeal but as defendant correctly points out, it can only be sustained if one ignores the language and import of Sections 401(a) and 404(a)(3) of the 1954 Internal Revenue Code, 26 U.S.C. These sections provide tax deductions to corporations for contributions made to stock bonus, pension or profit-sharing plans for employees, provided such programs operate through the mechanism of a trust. In order to qualify for the tax benefits conferred by these sections, a trust must be shown to be in existence. Tavannes Watch Co. v. Commissioner of Internal Revenue, 176 F.2d 211 (2d Cir. 1949); Community Services, Inc. v. United States, 422 F.2d 1353 (Ct.Cl. 1970). For this reason, although a trust was not required in 1935, the subsequent requirement of one by Congress, Revenue Act of 1954, soundly defeats plaintiff's "extension of the old plan" argument.

## THE EXISTENCE OF A TRUST

■ Plaintiff next contends that if Sec. 401(a) requires a trust as a condition precedent to enjoyment of the tax benefits that requirement was met in this case because the "Profit-Sharing Retirement Plan" was an implied or *de facto* trust. Defendant counters this argument by denying the presence of an essential element of a trust, and that is the intent to create a trust. The parties are in agreement that the other elements of a trust are present (settlor, res, beneficiaries, trustee, fiduciary duty between trustee and beneficiaries). Since an implied or *de facto* trust gives rise to the same legal consequences as an express trust, See e.g., Colton v. Colton, 127 U.S. 300, 8 S.Ct. 1164, 32 L.Ed. 138 (1887); Community Services, Inc. v. United States, *supra*; Tavannes Watch Co. v. Commissioner of Internal Revenue, *supra*, it must be ascertained whether the necessary element of intent was present in the execution of the "Profit-Sharing Retirement Plan".

■■ In order to create a trust, the settlor must externally disclose its intention in addition to the other elements noted heretofore. The disclosure or expression of intention " . . . may be determined by interpretation of the words or *conduct* of the settlor in the light of all the circumstances". (Emphasis supplied). Restatement (Second) of Trusts Sec. 4, Comment (a) at 13 (1959). Speaking in the context of an implied trust created by will, the Supreme Court has stated the rule in the following terms:

"No technical language, however, is necessary to the creation of a trust, either by deed or by will. It is not necessary to use the words "upon trust" or "trustee," if the creation of a trust is otherwise sufficiently evident. If it appear to be the intention of the parties from the whole instrument creating it that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to it the character of a trust . . . ." Colton v. Colton, 127 U.S. at 310, 8 S.Ct. at 1168.

■ Furthermore, an implied or *de facto* trust may arise from the con-

duct of the parties even where they expressly intend *not* to create a trust and the court will treat the matter as if a trust had been intended. Tavannes Watch Co. v. Commissioner of Internal Revenue, *supra*. The intention to create an implied or *de facto* trust is thus a function of the circumstances: if the parties do that to which the law attaches the consequences of a trust, they are considered to have expressed the necessary intent. Restatement (Second) of Trusts Sections 23 and 25 (1959).

██ The execution of the 1964 annuity contract created an enforceable fiduciary obligation between Aetna, plaintiff and plaintiff's employees which was sufficient to indicate the necessary intent to create a trust. Restatement (Second) of Trusts Sec. 25 (1959). This intent, coupled with the other ingredients noted heretofore, gave rise to a *de facto* trust. The fact that an implied or *de facto* trust is present instead of an express trust does not jeopardize plaintiff's case, because Sec. 401(a) may be satisfied by an implied or *de facto* trust. Community Services, Inc. v. United States, *supra*; Tavannes Watch Co. v. Commissioner of Internal Revenue, *supra*.

> "Implied trusts arise by implication of law 'because morality, justice, conscience and fair dealing demand that the relation be established'." (citations omitted). Reed v. Kellerman, 40 F.Supp. 46, 51 (E.D.Pa.1941).

This case presents an appropriate situation in which to apply that rule. Plaintiff in good faith did all of the things necessary to derive the tax benefits of Sec. 401(a), except formally create a trust. After receiving the adverse rulings from the Internal Revenue Service, plaintiff executed a virtually passive trust (its only function was to receive the annual premium from plaintiff and pay it to Aetna) and upon so doing, the Internal Revenue Service promptly granted plaintiff's plan approval to receive the tax benefits. The creation of this express trust was thus a mere for-

mality, for it did nothing to alter the pre-existing rights or duties of the *de facto* settlor, trustee and beneficiaries. Under these circumstances, it would be a sad triumph of form over substance to deny plaintiff's application for relief.

Plaintiff's motion for summary judgment is hereby granted and defendant's cross-motion is denied. Counsel for plaintiff shall submit an appropriate order. No costs.