Lorena Smith CABANISS, Appellant,

v.

Stephanie S. CABANISS, et
al., Appellees.

No. 81–1186.

District of Columbia Court of Appeals.

Argued Aug. 25, 1982.

Decided July 5, 1983.

William A. Bradford, Jr., Washington, D.C., for appellant.

Emmet G. Sullivan, Washington, D.C., for appellees.

Before KERN, MACK and BELSON, Associate Judges.

BELSON, Associate Judge:

This appeal presents the question whether the decedent's declarations and conduct shortly before his suicide manifested the intention to create a trust for the benefit of his daughter. We agree with the trial court that they did.

Appellant Lorena Smith Cabaniss, as executrix of the estate of her deceased husband, Dr. Charles Cabaniss, brought an action for conversion and declaratory and injunctive relief against appellees Stephanie Cabaniss, Verginald Dolphin and Independence Federal Savings and Loan Association, Inc. She appeals here from an order of the trial court denying her cross-motion for

summary judgment and granting the motion for summary judgment of defendant-intervenor Dr. Angela Ferguson, conservator of Carla Cabaniss, her incompetent daughter by her former marriage to Dr. Cabaniss. The court also awarded appellee Ferguson judgment in the amount of $25,-022.29, the sum which Dr. Cabaniss on the day before his death had delivered in the form of endorsed checks to his sister-in-law, codefendant Stephanie Cabaniss, but which was claimed also by appellant as executor of her deceased husband's estate. The trial court found that Dr. Cabaniss' undisputed oral and written declarations to Stephanie[1] and his other behavior on the day before his death created a valid *inter vivos* trust for the benefit of Carla Cabaniss with Stephanie as trustee and that consequently appellee Ferguson was entitled to summary judgment as a matter of law.[2] Appellant contends that Dr. Cabaniss' declarations and other behavior failed to demonstrate his unconditional, present intention to create a trust, that, subsequently, Dr. Cabaniss did not effectuate an unequivocal transfer of the endorsed checks to Stephanie for the benefit of Carla necessary to constitute a valid *inter vivos* trust, and that the disputed proceeds should properly be distributed through Dr. Cabaniss' estate. We disagree and, accordingly, affirm.

I

The parties stipulated to the controlling facts. On Friday, September 14, 1979, Dr. Cabaniss (decedent) called Stephanie Cabaniss and told her he had been "putting away" some checks for Carla Cabaniss, his incompetent adult daughter by his former marriage to appellee Ferguson. He asked

1. To facilitate the description of the facts, we will sometimes use the first names of persons whose last name is Cabaniss.

2. Appellee Ferguson prevailed in her argument that a valid *inter vivos* trust was created, of which Stephanie Cabaniss was trustee. The logic of that argument would appear to require that judgment be entered for Stephanie Cabaniss, as trustee. The record before us does not

reveal why judgment was entered for Dr. Ferguson, as conservator, instead of for Stephanie Cabaniss as trustee. We are unaware, on this record, whether Dr. Ferguson was appointed trustee in substitution for Stephanie Cabaniss. While no party has raised the matter on appeal, we trust that the parties have seen or will see to it that Dr. Ferguson's capacity as trustee is clarified.

if she would mind "keeping these for him." She said she would not mind, and he said he would talk to her more about it the next day.

Saturday morning, September 15, decedent arrived at Stephanie's home, bringing with him checks payable to his order, which he had received as payment for medical services. He told Stephanie that he "wanted to get [the checks] out of the house" and that he wanted her to "open up a joint checking account for Carla's benefit." He then wrote a letter addressed to Verginald L. Dolphin, an attorney with whom he had consulted on unrelated matters. Decedent's letter authorized Stephanie to deposit the endorsed checks in an account to be opened by Stephanie "jointly with my daughter Carla V. Cabaniss with the right of withdrawal for the various needs of Carla Cabaniss."[3] Stephanie asked whether there was "some way [decedent] could fix it so that the money would be completely in Carla's name." He told her that he could make her "trustee for the money," to which suggestion Stephanie agreed.

Decedent then wrote a second letter addressed to Dolphin giving him "power of attorney to provide Mrs. Stephanie Cabaniss the authority to open a bank account with the checks endorsed by me for the benefit of my daughter Carla Cabaniss in the sum of $25,022.29 as indicated in the letter she holds." A postscript to the letter states: "Mrs. Stephanie Cabaniss is to act as trustee and withdrawals are to be used only for the benefit of Carla V. Cabaniss."

Stephanie asked decedent whether he would "check out" the letters with Dolphin.

Decedent said that he would. He then wrapped up the checks in the letters and went with Stephanie to a file cabinet. Stephanie placed the checks in the cabinet for safekeeping, so that "[he would] get them when [he wanted] them or if he [needed] them." Decedent had possessed a key to Stephanie's home for some time.

Stephanie told decedent that he would probably have to accompany her to the bank to authorize the deposits. No time was set, but Stephanie felt that decedent would initiate such a trip. Decedent left her home shortly thereafter and she never spoke with nor saw him again.

Later on that same day, decedent entered Stephanie's home again while she was in Richmond, Virginia. He concealed under a pillow on her bed a letter, some cash and checks, none of which is relevant to this appeal.[4] Upon leaving the house, decedent left his key to Stephanie's house on the rug just inside her door.

Upon returning to her home from Richmond that evening and discovering his key, Stephanie unsuccessfully attempted to contact decedent. She did not discover the items under her pillow that evening.

On the next day, decedent committed suicide alone in a locked room at his office. The District of Columbia Medical Examiner's Office estimated the time of death at between 4:00 p.m. and 10:00 p.m. That evening Stephanie discovered the items decedent had left under her pillow.

The next morning, Monday, September 17, when she was unable to locate decedent, Stephanie took the checks and the other

3. The text of the letter is as follows:
   To Verginald Dolphin Esq.
      This is to authorize Mrs. Stephanie Cabaniss to deposit the enclosed checks endorsed by me:

   1,316.00
   23,706.29
   $25,022.29

   She is to deposit these checks in an acct. jointly with my daughter Carla V. Cabaniss with the right of withdrawal for the various needs of Carla Cabaniss.

   Thank you
   Sincerely
   /s/   Charles M. Cabaniss M.D.

4. The letter read in part:
   Steph,
      Your're the only one I can really trust and rely on . . . . (4) Sorry to put you in the middle but thanks.
                                    s/
   P.S.  Sorry, I felt like an intruder but remember I had a key.
                                    Love to you,
                                    s/

documents and money with her to her place of employment. By telephone Stephanie informed attorney Dolphin about decedent's actions on Saturday. They agreed that she would come over to his office. Dolphin advised her to deposit the cash and the checks in trustee savings accounts at the Independence Federal Savings & Loan Association. His secretary accompanied Stephanie to the Savings & Loan where the money was deposited in trustee accounts. While they were gone, Dolphin called decedent's office, attempting to locate him. Shortly thereafter, decedent's body was found in the locked room and Dolphin was notified. Stephanie learned of the death upon returning to Dolphin's office from the bank.

Decedent did not leave a suicide note or a letter in contemplation of death. He never discussed the disposition of the checks with Dolphin. He did not communicate to Dolphin any instructions regarding the checks, other than those contained in the letters he gave Stephanie.

Decedent left a valid will. The will referred to a trust agreement, which he had also created. Carla Cabaniss, decedent's other two surviving children, and his surviving wife are beneficiaries of the will and of the trust agreement.

On October 3, 1979, appellant Lorena Cabaniss, in her individual capacity, and as collector of the estate of her deceased husband, filed a complaint for conversion and other relief against codefendants Stephanie S. Cabaniss, Verginald Dolphin, and Independence Federal Savings & Loan Association. In her complaint, she alleged that she had rightful ownership of checks, bonds and cash totaling $80,000 in value, which decedent had given to various third parties shortly before his death. The total amount included the $25,022.29 at issue here.

Appellee Ferguson moved to intervene as the conservator of the estate and person of Carla Cabaniss, her daughter by decedent, alleging that Carla had an interest in the fund which was the subject matter of the action, and that Carla's interests were not adequately represented by the named defendants. See Super.Ct.Civ.R. 24(a). The trial court granted the motion.

On October 28, 1980, the parties entered into a court-approved stipulation of partial settlement disposing of all decedent's assets except the amount at issue in this appeal. Regarding the latter amount of $25,022.29, the stipulation agreement provided that the motions court would determine the disposition based on cross-motions for summary judgment by any claimants and that the deposition of Stephanie Cabaniss, and other agreed-upon material facts would constitute the undisputed facts upon which the cross-motions would be based.

Appellant Lorena Cabaniss and appellee Ferguson were the only claimants. They filed cross motions for summary judgment. On July 31, 1981, at a hearing on the motions, the court ruled as follows:

> [T]he court is satisfied that trust was established [and] his contacting the lawyer and going to the bank, were merely mechanical ways to implement an intent that was already manifested by the delivery of the property and grants motion for the intervenor, conservator of Carla Victoria Cabaniss and denies the cross-motion. . . .

The court entered judgment on the same day. Appellant noted a timely appeal.

## II

When reviewing a trial court order granting summary judgment, this court makes an independent review of the record. See *Holland v. Hannan,* 456 A.2d 807, 814 (D.C. 1983); *Scrimgeour v. Magazine,* 429 A.2d 187, 188 (D.C.1981). Our standard of review is the same as the trial court's standard for initially considering the parties' motions for summary judgment. See *Holland v. Hannan, supra,* 456 A.2d at 814; *Wyman v. Roesner,* 439 A.2d 516, 519 (D.C. 1981). We will affirm the entry of summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c). See *Hol-*

land v. Hannan, supra, 456 A.2d at 814; Ellis v. Safeway Stores, Inc., 410 A.2d 1381, 1382 (D.C.1979). In determining whether an issue of fact exists, the trial court is to examine the pleadings, depositions, stipulations, and admissions on file together with any affidavits. Holland v. Hannan, supra, 456 A.2d at 815; Turner v. American Motors General Corp., 392 A.2d 1005, 1006 (D.C.1978).

Applying the foregoing considerations to the present case, we are satisfied that the trial court properly concluded, as a matter of law, based on the undisputed evidence before it, that decedent's oral and written declarations and his conduct manifested his intention to create a trust for the benefit of Carla Cabaniss of which Stephanie Cabaniss was trustee. We therefore hold that the court properly determined that appellees were entitled to summary judgment.

█ In the absence of any definitive case or other authority in this jurisdiction on the specific matter at issue, we have turned to, and conclude we agree, with the pertinent sections of the RESTATEMENT (SECOND) OF TRUSTS (1959). According to Section 2 of the Restatement, a trust

> is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.[5]

See, e.g., Coleman v. Golkin, Bomback & Co., Inc., 562 F.2d 166, 168–69 (2d Cir.1977). The elements of a trust, including an inter vivos trust created for the benefit of a third person, are the following: 1) a trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; 2) a beneficiary, to whom the trustee owes equitable duties to deal with the trust property for his benefit;

3) trust property, which is held by the trustee for the beneficiary. See RESTATEMENT (SECOND) OF TRUSTS, § 2 and comments (h)–(k), § 23 and comment (a), § 24 and comment (b), § 32 and comments (a)–(n). See also Coleman v. Golkin, Bomback & Co. Inc., supra, 562 F.2d at 168–69.

█ Unless otherwise provided by statute, such as the Statute of Frauds or Statute of Wills, an enforceable trust can be created without a writing. See RESTATEMENT (SECOND) OF TRUSTS, § 40. See, e.g., Bottenfield v. Wood, 264 Ark. 505, 508, 573 S.W.2d 307, 309 (1978). Essential to the creation of a trust is the settlor's manifestation or external expression of his intention to create a trust. See RESTATEMENT (SECOND) OF TRUSTS § 2, comment (g), and § 23 and comment (a). See also Trenton Times Corp. v. United States, 361 F.Supp. 222, 225–26 (D.N.J.1973); Petherbridge v. Prudential Savings & Loan Ass'n., 79 Cal. App.3d 509, 513, 145 Cal.Rptr. 87, 93 (Cal. Ct.App.1978); La Throp v. Bell Federal Savings & Loan Ass'n., 68 Ill.2d 375, 12 Ill.Dec. 565, 568, 370 N.E.2d 188, 191 (1977), cert. denied, 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978). Such manifestation may be by written or spoken language or by conduct, in light of all surrounding circumstances. See RESTATEMENT (SECOND) OF TRUSTS § 24 and comment (b). See also Trenton Times Corp. v. United States, supra, 361 F.Supp. at 225; Walsh v. St. Joseph's Home for the Aged, 303 A.2d 691, 695 (Del.Ch.1973). No particular form of words or conduct is necessary to manifest an intention to create a trust. See RESTATEMENT (SECOND) OF TRUSTS § 23 and comment (a). See also Coleman v. Golkin, Bomback & Co., Inc., supra, 562 F.2d at 169; Monell v. College of Physicians and Surgeons, 198 Cal.App.2d 38, 48, 17 Cal.Rptr. 744, 751 (Cal.Dist.Ct.App.1962). Cf. Colton v. Colton, 127 U.S. 300, 310, 8 S.Ct. 1164, 1168, 32 L.Ed. 138 (1887). Among the ex-

---

5. The foregoing definition applies to the term trust when it is not qualified by the words "charitable," "constructive," or "resulting." The term "express trust" is used to distinguish between a trust as defined above in the text and a resulting or constructive trust. The term "private trust" is used to distinguish between a trust as defined above and a charitable trust. RESTATEMENT (SECOND) OF TRUSTS § 2, comment a (1959).

trinsic circumstances and evidentiary factors pertinent to a determination of a settlor's intention to create a trust are (1) the imperative, as distinguished from precatory, nature of the words used by the settlor to create a trust; (2) the definiteness of the trust property; (3) the certainty of the identity of the trust beneficiaries; (4) the relationship between and financial positions of the parties; (5) the motives which may reasonably be supposed to have influenced the settlor in making the disposition, and (6) whether the result reached in construing the transaction as a trust would be such as a person in the situation of the settlor would naturally desire to produce. RE-STATEMENT (SECOND) OF TRUSTS § 25 and comment B, § 23 and comment (a), § 24 and comment (b). *See Tschiffely v. Tschiffely,* 70 U.S.App.D.C. 386, 389, 107 F.2d 191, 194 (1939); *La Throp v. Bell Federal Savings & Loan Association, supra,* 68 Ill.2d at 381, 370 N.E.2d at 191; *In re Estate of Brooks,* 20 Wash.App. 311, 315, 579 P.2d 1351, 1353 (1978); *Petherbridge v. Prudential Savings & Loan Ass'n., supra,* 79 Cal.App.3d at 517–20, 145 Cal.Rptr. at 93–5.

Appellant contends that decedent failed to demonstrate sufficiently his intention to create a trust by his incomplete testamentary transfer of the endorsed checks to Stephanie. *See* RESTATEMENT (SECOND) OF TRUSTS § 56. She also contends that decedent simply designated Stephanie as his agent to hold the checks for safekeeping pending his further instructions regarding their disposition, and that such agency authority terminated with his death. Alternatively appellant asserts that decedent failed to manifest an unambiguous firm intention to create a present trust. *See* RESTATEMENT (SECOND) OF TRUSTS § 26. In support of this contention appellant maintains that decedent specifically conditioned any trust arrangement upon his accompanying Stephanie to the bank to open up the trust account following a disposition of the trust funds with attorney Dolphin. Appel-

lant also asserts that decedent, at most, delivered possession of the endorsed checks to Stephanie, and not title, because he retained access to and subsequent control over them. *See* RESTATEMENT (SECOND) OF TRUSTS § 32. None of these contentions persuades us.

■ We agree with the trial court that decedent adequately manifested his intention to create a trust and subsequently complied with the formalities necessary to bring about that result. In his oral declarations to Stephanie and in his letters executed in Stephanie's presence, decedent imperatively and unambiguously designated his daughter Carla as beneficiary, appointed Stephanie trustee, and identified the endorsed checks as the trust property. Simultaneously, decedent unconditionally negotiated the checks to Stephanie by endorsing them in blank and by delivering them to, and leaving them in, Stephanie's exclusive possession. *See* D.C.Code §§ 28:3–202, –3–204(2) (1981).[6] Moreover, decedent's later surrender of his key to Stephanie's house confirms that he relinquished all control of the trust property to Stephanie. *See, e.g.,* D.C.Code § 28:3–201 *et seq.* (1981). Such definitive acts negate any inference that Stephanie held the checks as decedent's agent, subject to his further instructions regarding disposition of the checks. *See* RESTATEMENT (SECOND) OF TRUSTS § 8 and comments (a)–(h). *See, e.g., N.L.R.B. v. United Brotherhood of Carpenters & Joiners,* 531 F.2d 424, 426–27 (9th Cir.1976).

■ We also conclude that the record does not support appellant's contention that decedent manifested his intention to create a trust *only* when, but not until, he initiated a trip to the bank with Stephanie or discussed the trust arrangements with Dolphin. It was Stephanie who raised the possibility that decedent's cooperation might be needed to open a savings account. Decedent had already made clear that he was

---

6. The fact that decedent also left a valid will and another valid trust agreement referred to in the will, both of which make Carla a benefi-

ciary of decedent's estate, does not in any way impair the independent creation of this *inter vivos* trust.

creating the trust, and his agreement to comply with any requirements of a savings institution did not alter that fact. Nor did his agreement to review the matter with attorney Dolphin have that effect. We are satisfied that Dr. Cabaniss went to his unfortunate death in the belief that he had taken additional steps to assure the well-being of his incompetent daughter.

We conclude that the trial court correctly ruled that decedent had unconditionally manifested his intention to create a trust, that the trust was created for the benefit of Carla, and that consequently appellee was entitled to summary judgment as a matter of law.

*Affirmed.*