In re ESTATE OF John W. TUTHILL.

Burke & Herbert Bank & Trust
Co., et al., Appellants.

No. 98–PR–1181.

District of Columbia Court of Appeals.

Submitted Nov. 16, 1999.
Decided May 11, 2000.

William J. Carter and Paul J. Maloney,
Washington, DC, were on the brief for
appellants.

Before REID and WASHINGTON,
Associate Judges, and MACK, Senior
Judge.

WASHINGTON, Associate Judge:

This matter comes before the court on
appellants' appeal of the trial court's denial
of the Trustee's Motion to Reconsider its
denial of the Trustee's Consent Motion to

Reform Trust.[1] Appellants argued in the trial court that a scrivener's mistake had made it impossible for the Trustee to effectuate the intent of the decedent, Mr. Tuthill, to provide all of the income and as much of the principal as was necessary from the Trust to support Mrs. Tuthill during her lifetime. The single issue on appeal is whether the trial court erred in denying the appellants' Motion to Reform the Trust because the appellants failed to introduce certain evidence that the trial court believed was necessary to satisfy the appellants' burden of proof. While the trial court correctly determined that in order to grant the reformation motion the appellants had to introduce clear and convincing evidence of the decedent's intent, the trial court's reliance on the absence of specific extrinsic evidence to deny the appellants' Motion to Reform the Trust was in error. Accordingly, we reverse and remand the case.

## I.

The facts of this case are simple. On September 29, 1993, John and Erna Tuthill met with Joy S. Chambers, Esquire for estate planning purposes. Based on that conversation, Ms. Chambers produced draft wills and trust documents, as well as an advisory transmittal letter describing the purposes and goals of the draft documents, and mailed them to Mr. and Mrs. Tuthill on October 8, 1993. The Tuthills executed the trust documents on October 20, 1993. Because Mr. Tuthill had always handled the family finances, he named himself as Trustee and Beneficiary of the Trust during his lifetime. The Trust provided that at the time of his death, if Mrs. Tuthill survived him, two Trusts were to be created, a Family Trust and a spillover Marital Trust. The Family Trust made up the first fractional share of the Trust assets that could pass free from federal estate taxes, which at the time was $600,000.

Any assets above $600,000, according to a fractional formula, would then fund the Marital Trust. The spillover Marital Trust was designed to ensure that any trust assets over $600,000 would become part of the survivor's estate for estate tax purposes. The primary purpose in creating the Trust was to shelter as much of the Tuthills' assets as possible from estate taxes.

At that time, estate tax law allowed each person a $600,000 exemption during life or at death without taxes being due. There was also an unlimited marital deduction which permitted transfer of an unlimited amount of property between spouses, also without incurring any estate taxes. Therefore, if one spouse were to die and all the property went to the surviving spouse, there would be no estate tax due to the marital deduction. However, when the surviving spouse died in possession of all of the family assets, any monies over the $600,000 exemption would be taxed at a rate that began at about forty percent. In order to avoid this tax consequence, Ms. Chambers intended to fully utilize each spouse's $600,000 exemption. Therefore, upon Mr. Tuthill's death, rather than giving all of his assets to Mrs. Tuthill, up to $600,000 was put into a Family Trust so that the Family Trust's assets would not be considered part of Mrs. Tuthill's estate at her death, and assuming the assets in her trust were substantial, up to a maximum of $1,200,000 could pass tax free to their children, $600,000 through the estate of Mrs. Tuthill when she died under the exemption, and the $600,000 in the Family Trust created by Mr. Tuthill.

Mr. Tuthill died on September 9, 1996, and was survived by his wife. At that time, the Trust contained assets of approximately $430,000. Accordingly, the entire amount funded the Family Trust, and the Marital Trust never came into existence. Soon after Mr. Tuthill's death, the Trustee

---

**1.** No brief has been filed on behalf of appellees. All parties to this case seek reformation of the trust.

and Ms. Chambers realized that the language of the Trust did not contain a provision that would allow the Trustee to make income and principal payments to Mrs. Tuthill for her support during her lifetime. The appellants assert that Mr. Tuthill intended for Mrs. Tuthill to enjoy all the income and, if necessary, part of the principal from the Family Trust during her lifetime. Although distributions of the principal carried some limitations, the Trustee, who was Mrs. Tuthill's sister, was supposed to have the authority to make such distributions. Appellants also assert that Mr. Tuthill decided to fund the Family Trust and create a spillover Marital Trust to maximize the amount of assets that could pass free from federal estate taxes, not to limit Mrs. Tuthill's access to the funds in the Family Trust that she needed for her support. No argument to the contrary was presented to the trial court.

In support of their argument, the appellants presented the trial court with an affidavit by Ms. Chambers which stated that Mr. Tuthill had told her that he wanted the assets in the Trust to be used primarily for the care and support of Mrs. Tuthill during her lifetime. The affidavit further stated that Ms. Chambers had mistakenly omitted the necessary language in the trust document that would have allowed the Trustee to distribute the income and access funds for that purpose. Ms. Chambers' affidavit also supports the appellants' argument that the sole reason for creating the two-trust system with spillover was to allow for up to $1,200,000 to pass free from estate taxes. In addition to her affidavit, the appellants also presented the trial court with Ms. Chambers' advisory transmittal letter to the Tuthills regarding, *inter alia*, the trust documents. That advisory transmittal letter states in pertinent part that "all of the income of the Family Trust [is] to be paid to the surviving spouse. The surviving spouse [is] also eligible to receive principal if needed for

support and medical care." Thus, it was her understanding that the Trust was designed to allow the Trustee to make the described payments to the surviving spouse from the Trust. The appellants also presented the affidavit of the decedent's sole surviving child and a beneficiary of the Family Trust, David Tuthill. He confirmed that his father told him that he intended to provide for Mrs. Tuthill upon his death. In addition to the evidence described above, the trust documents were also presented to the trial court as evidence that Mr. Tuthill intended, in creating the Trust, to provide for Mrs. Tuthill while minimizing the exposure of their estate to taxes upon their respective deaths. Finally, the omitted language was presented to show how the insertion of such language would facilitate the alleged actual intent of Mr. Tuthill.

Despite the evidence presented by appellant, the trial court found that the appellants' had failed to clearly and convincingly prove that Mr. Tuthill intended to provide for his wife with the funds in the Family Trust. The appellant thereafter filed a Motion for Reconsideration. The trial court also denied this motion. The trial court's stated reason for denying the Motion for Reconsideration was that the evidence provided by the appellants did not include a statement by Mr. Tuthill of his intent to provide for his wife through the Family Trust and that without such a statement, the appellants could not meet the clear and convincing standard required for reformation. *See Roos v. Roos,* 203 A.2d 140 (Del.Ch.1964) (where the court relied in part on a preamble of the trust), and *Pond v. Pond,* 424 Mass. 894, 678 N.E.2d 1321 (1997) (where a settlor's will provided additional evidence of intent).

## II.

As an initial matter, appropriate grounds must be established for reformation of a trust.[2] The party seeking refor-

---

2. Mistake by the scrivener is one such ground. George G. Bogert & George T. Bo-

mation bears the burden of establishing the settlor's actual intent has been displaced by the error. *See* Bogert & Bogert, *supra* note 2, § 991. In cases where a determination must be made as to whether a settlor has created a trust, we demand clear and convincing evidence. *See Duggan v. Keto*, 554 A.2d 1126, 1133 (D.C. 1989) (determining that the test for proving an intent to create a trust is clear and convincing evidence). Furthermore, we have determined that "[a]mong the extrinsic circumstances and evidentiary factors pertinent to a determination of a settlor's intention to create a trust [include] . . . the relationship between and the financial positions of the parties, the motives which may reasonably be supposed to have influenced the settlor in making the disposition, and whether the result reached in construing the transaction as a trust would be such as a person in the situation of the settlor would naturally desire to produce." *Cabaniss v. Cabaniss*, 464 A.2d 87, 91–92 (D.C.1983) (citing Restatement (Second) of Trusts § 25 and comment B, § 23 and comment (a), § 24 and comment (b) (1959)). Determining the settlor's intent for reformation purposes must follow similar guides. Therefore, appellant has the burden of proving the settlor's intent by clear and convincing evidence for purposes of trust reformation. *See* George T. Bogert, Trusts § 146 (6th ed.1987).

▮ Other jurisdictions have reached similar conclusions. The respective courts in *Pond v. Pond, Berman v. Sandler*, and *Roos v. Roos*, have held that the settlor's intent must be proven with clear and convincing evidence and that, similar to the intent of the settlor in creating a trust, all pertinent, extrinsic circumstances must be taken into consideration and examined. *See Pond*, 678 N.E.2d at 1323; *Berman v. Sandler*, 379 Mass. 506, 399 N.E.2d 17, 20 (1980); *Roos*, 203 A.2d at 143. Although the settlor's intent for purposes of trust

reformation must be proven by clear and convincing evidence, and "extrinsic circumstances and evidentiary factors pertinent to a determination of a settlor's intention" must be carefully examined, *Cabaniss*, 464 A.2d at 92, we recognize that these determinations are fact driven and that each piece of evidence presented to the court is *only* a factor in determining the overall intent of the settlor. Two of the previously cited cases are particularly illustrative. In *Roos*, the court granted a motion to reform a trust after determining that a supporting affidavit of the attorney who prepared the trust, the allegations of the complaint, the defendant's consent to reformation, and the preamble of the trust instrument constituted clear and convincing evidence of the actual intent of the settlor. *See Roos*, 203 A.2d at 143. The *Pond* court, in reaching a similar conclusion that reformation was appropriate, determined that the settlor's will and the identification of the surviving wife as beneficiary in the trust constituted clear and convincing evidence to establish the actual intent of the settlor. *See Pond*, 678 N.E.2d at 1324.

**III.**

▮ In this case, the trial court, after correctly determining that the appellants were required to introduce clear and convincing evidence in order to prevail on their Motion to Reform Trust, was faced with the exceedingly difficult task of ascertaining the intent of Mr. Tuthill. Because clear and convincing evidence was required by law, the trial court ruled that without a clear statement of Mr. Tuthill's intentions, made by the decedent himself, the evidence presented could not meet the clear and convincing standard required by law. However, we do not read the authorities cited from other jurisdictions to demand a statement of intent by the settlor in order to grant reformation motions, and we do not hold so here. In those cases, like the

---

GERT, Trusts & Trustees 2nd ed. rev. (1983 & Supp.1999). Mistake must be proven by evidence presented at trial that is full, clear and decisive. *See Pond*, 678 N.E.2d at 1323.

Here, the record indicates a scrivener's mistake through the substantiated affidavit of the scrivener.

present case, significant evidence was presented regarding the settlor's intent. The fact that those courts found certain other evidence, not found in this case, to be compelling—in *Roos*, the trust preamble and in *Pond*, the settlor's will—does not mean that the evidence presented by appellants to establish Mr. Tuthill's intent in this case is not clear and convincing. Had either the *Roos* court or the *Pond* court been provided with extrinsic circumstances and evidence that did not include a statement by the settlor, we can only speculate as to whether their decisions to grant reformation would have been different.[3] In dispensing its obligation, a trial court must "ascertain the settlor's intent, [by] look[ing] to the trust ... as a whole and in particular focus[ing] on the circumstances known to the settlor upon execution of the [trust]." *Berman*, 399 N.E.2d at 20; *see also Pond*, 678 N.E.2d at 1323.

In this case, the appellants submitted the affidavit testimony of the attorney responsible for drafting the estate planning documents. Her testimony established that at the time the Trust was created it was her understanding that Mr. Tuthill wanted his wife to enjoy the assets in the Trust for her support. Appellants submitted the advisory transmittal letter from Ms. Chambers to the Tuthills in support of her affidavit. Ms. Chambers further admitted that, but for her mistake, the Trust would have accomplished that goal. In addition, David Tuthill, a named beneficiary of the Trust, stated unequivocally that it was Mr. Tuthill's stated intent to provide first for his wife and then for his family from the assets of his estate. The appel-lants also presented the trust documents that created the "Family Trust" and the potential spill over "Marital Trust." While it is certainly appropriate for a court to view the evidence presented with a healthy skepticism, especially in the case of a Motion to Reform a Trust, the court still has an obligation to evaluate and weigh the evidence presented to determine whether it meets the requisite standard of proof.

In rejecting the appellants' offer of proof, the trial court made no findings as to why this evidence was insufficient as a matter of law to satisfy appellants' burden other than to suggest that, in the absence of a clear statement by Mr. Tuthill of his intent, the appellants could not prevail.[4] Because the law does not require a party to produce any particular evidence to support its obligation under the clear and convincing evidence standard for reformation of a trust, we find that the trial court should have determined from the evidence that was presented, whether appellants met their burden of proving that Mr. Tuthill intended for his wife to have access to the funds in the Family Trust upon his death. The trial court's failure to do so was error. Because it is not clear that the trial court weighed the evidence presented given her reliance on the absence of other evidence, we reverse and remand the case for further consideration of the evidence presented in a manner not inconsistent with this opinion.

*So ordered.*

---

3. Other courts have found clear and convincing evidence of the settlor's intent without the necessity of a preamble, a will, or any other statement of and by the settlor. In *Griffin v. Griffin*, 832 P.2d 810, 814 (Okl.1992), the Oklahoma Supreme Court upheld a trial court's decision to grant a reformation motion based on (1) the undisputed testimony of the tax attorney, (2) a letter of an attorney whom grantor consulted, and (3) the admissions of the executor of the estate. Also, in *Ike v. Doolittle*, 61 Cal.App.4th 51, 70 Cal. Rptr.2d 887, 897 (1998), the California Court of Appeals found clear and convincing evidence of a settlor's intent through (1) the testimony of the drafter, (2) expert testimony on tax savings, (3) five supporting witnesses, and (4) the trust.

4. Based on the foregoing analysis, we are hard pressed to discern why the evidence in this case does not rise to the level of clear and convincing. However, we are mindful that as a reviewing court such a decision is not ours to make in the first instance.