Ann FIELDING, Plaintiff,

v.

BT ALEX BROWN, et al., Defendants.

No. CIV. A. 98–154(GK).

United States District Court,
District of Columbia.

Aug. 15, 2000.

Order Denying Reconsideration
Oct. 3, 2000.

John C. LaPrade, Washington, DC, Steven Teppler, Kensington, MD, for Ann Fielding.

Benjamin Boyd, Piper, Marbury, Rudnick & Wolfe, LLC, Washington, DC, for BT Alex Brown Corp.

Denise Sabagh, Jeffrey Phillip Bloom, Duane Morris & Heckscher, L.L.P., Washington, DC, Daniel B. Rath, Duean, Morris & Hecksher, L.L.P., Wilmington, DE, for Delaware Charter & Guar. Trust Co.

Alan Soschin, Washington, DC, for Jayne Seabold.

## MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff Ann Fielding[1] brings this action against BT Alex Brown Corp. ("BT Alex Brown"), Delaware Charter & Guarantee Trust Co. ("Delaware Charter"), and Jayne Seebold, individually and on behalf of her children, Aaron and Rebecca Fielding, under D.C.Code §§ 19–113 and 19–303, and the common law of the District of Columbia. Plaintiff alleges that she was the common law wife of decedent Byron Fielding from May 1996 until his death in October 1997. She further alleges that the IRA Trust that decedent attempted to establish just prior to their alleged common law marriage was invalid, illusory, and fraudulent, and therefore the Trust's assets should be considered part of decedent's estate, of which Plaintiff is entitled to a statutory share.

This matter comes before the Court on the motions for summary judgment of Plaintiff and Defendant Jayne Seebold. Upon consideration of all the pleadings, the entire record herein, and the applicable case law, for the reasons stated below, Plaintiff's Motion for Summary Judgment [# 61] is **granted in part and denied in part,** and Seebold's Cross Motion for Summary Judgment [# 62] is **denied.**

### I. Factual Background[2]

Plaintiff and decedent married in August 1965. At no time during their marriage did they have children. At some point in 1983, after the two had been married for nearly thirty years, decedent developed a relationship with one of his coworkers, Jayne Seebold. Decedent fathered a child with Seebold in March 1984

---

1. For the sake of clarity, Byron Fielding will be hereafter referred to as "decedent" and Plaintiff Ann Fielding will be referred to as "Plaintiff."

2. Summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Consequently, unless otherwise noted, the Court states only uncontroverted facts.

(Aaron), while decedent was still married to Plaintiff.

In June 1984, decedent and Plaintiff were divorced. Shortly thereafter, decedent married Seebold and they had another child, Rebecca, several years later. In 1990, while Seebold was still married to decedent, Seebold developed a relationship with Gerald Furman. In November 1990, decedent and Seebold were divorced, with Seebold receiving custody of their two children and decedent having visitation rights.

In December 1992, decedent and Furman (Seebold's then-boyfriend) had an altercation relating to how Aaron and Rebecca should be raised, and decedent shot and seriously wounded Furman. Decedent was convicted and served approximately three and a half years in prison for his role in the offense. During his imprisonment, decedent developed a renewed, though not necessarily intimate, relationship with Plaintiff, his former wife of twenty-nine years. Plaintiff paid $10,000 in decedent's legal fees, and periodically loaned him hundreds of dollars.[3] Plaintiff alleges that decedent began referring to her as his "wife" and that he promised to marry her on her birthday, May 10, 1996.

Upon his release in April 1996, decedent began living with Plaintiff. At some point, they began using joint checking accounts and taking out joint automobile insurance policies. They slept in the same bedroom.[4] Plaintiff alleges that on her birthday, May 10, 1996, she and decedent were "married" in the common law sense of that term. They did not exchange rings, nor did they exchange vows in an official marriage ceremony.[5] However, according to Plaintiff, she and decedent held themselves out as a married couple, telling friends and neighbors that they were husband and wife.[6]

Twenty-three days earlier—that is, 23 days before his alleged common law marriage to Plaintiff—decedent applied to establish a Rollover Individual Retirement Account ("IRA" or "R–IRA") Trust ("the Trust"), "rolling over" tax-deferred funds from a previous retirement account he maintained. Decedent named Delaware Charter as Trustee and designated Aaron and Rebecca Fielding, the children from his marriage to Seebold, as the Trust's beneficiaries. Lafayette Investments maintained the Trust account and BT Alex Brown served as the bank in which the Trust assets were deposited.

To establish the Trust funds, Decedent deposited into a BT Alex Brown bank account six checks, beginning April 22, 1996 and ending July 17, 1996. Two of these checks were deposited after the alleged common law marriage—on May 13 and July 17 in the amounts of $102,391 and $109,587, respectively.[7] The Trust assets totaled approximately $470,000 at the time of the Trust's formation and approximately $550,000 at the time of decedent's death. At no time did decedent inform Plaintiff of the Trust's existence, nor did he tell her of his substantial assets.

During the short duration of the alleged common law marriage (approximately 17 months), Plaintiff was employed, and decedent was not. Plaintiff provided financial support to decedent, paying some of his outstanding bills and charge accounts. Decedent died intestate in October 1997. Plaintiff paid for his funeral expenses, which amounted to approximately $1,400. In total, Plaintiff estimates that she spent many thousands of dollars on behalf of decedent during the alleged common law marriage.[8] Shortly after decedent's death, Plaintiff learned of the Trust which decedent had established, the assets of which

---

3. *See* Pl.'s Mot. for Summ. J., Ex. E (Dep. of Anne Fielding)., at 9.

4. *Id.* at 7.

5. *Id.* at 10.

6. *See* Pl.'s Mot. for Partial Summ. J., Ex. E (Decl. of Elizabeth Merritt) at 2.

7. *See* Pl.'s Reply to Seebold's Opp'n, Ex. C (Declaration of Lawrence Judge), at ¶ 6.

8. Pl.'s Mot. for Partial Summ. J., Ex. B (Invoice of Funeral Expenses).

were intended entirely for Aaron and Rebecca Fielding.

## II. Standard of Review

Each party seeking summary judgment bears the burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the parties have met this burden, a court must consider all factual inferences in the light most favorable to the non-moving party. *McKinney v. Dole*, 765 F.2d 1129, 1135 (D.C.Cir.1985). Once the moving party makes its initial showing, however, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial" so that summary judgment is not appropriate in favor of the movant. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *McKinney*, 765 F.2d at 1135. Moreover, "[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Local Rule 7.1(h).

## III. Analysis

Plaintiff requests that the Court declare the Trust assets to be part of decedent's estate, thereby permitting her to take her statutory one-third share of the assets under District of Columbia law. Seebold requests that the Court order the Trust to be declared valid so that its assets will be held for Aaron and Rebecca Fielding, the Trust's named beneficiaries.

Both Plaintiff and Seebold have filed motions for summary judgment. Both motions relate to the validity of the Trust and turn on whether decedent's decision to establish the Trust and conceal its existence from Plaintiff constituted a form of marital fraud. However, Plaintiff's motion is more precisely one for "partial" summary judgment, since the Court has already declared that, based on disputed facts and credibility issues, the alleged common law marriage between Plaintiff and decedent cannot be established as a matter of law on the pleadings alone. Order of July 15, 1999 (denying Plaintiff's Motion for Partial Summary Judgment).[9]

Plaintiff makes three arguments as to why the Trust assets should be considered part of decedent's estate, so that she is entitled to a one-third share of those assets. If Plaintiff prevails on any one of these arguments, she would be entitled to partial summary judgment.

First, Plaintiff argues that the Trust is defective because, among other things, there is no evidence that the Trustee ever took title to the Trust assets. Second, Plaintiff argues that the Trust is "illusory" because decedent exercised substantial control over it, thus making the relationship between the putative grantor (decedent) and trustee (Delaware Charter) one of mere "agency." Finally, Plaintiff argues that the Trust, assuming it was properly created, is a fraudulent attempt to "strip the marital estate" of assets, thus depriving Plaintiff of her statutory share of decedent's estate.[10]

Seebold disagrees with each of Plaintiff's three contentions, contending that the Trust was properly established, that it was not illusory, and that its creation was not an attempt to defraud the common law

9. The Order stated: "Plaintiff seeks on partial summary judgment a declaration that she and Byron Fielding were united in a common-law marriage from the period of May 1996 to October 1997. The record, as it stands, however, presents far too many disputed issues of fact for the Court to rule on summary judgment." Order of July 15, 1999.

10. Plaintiff also attacks the legitimacy of the Trust on the basis that Delaware Charter has violated a laundry list of D.C. statutes, including D.C.Code §§ 26–435, 26–103, and 26–107. *See* Pl.'s Mot. for Summ. J., at 15–16. Plaintiff fails to explain how these violations would have any effect on the resolution of this case. Plaintiff fails to offer even a scintilla of evidence (except for some telephone call to a government employee) to support her conclusory assertion that Delaware Charter "is apparently is [sic] operating in violations [sic] of the D.C.Code."

marital estate. Accordingly, Seebold requests summary judgment on behalf of herself and her children Aaron and Rebecca Fielding, the designated beneficiaries of the Trust assets.

Because the Court finds that Plaintiff has submitted competent summary judgment evidence that the Trust was not properly created, and Seebold has failed to refute this evidence, the Court will grant Plaintiff partial summary judgment on this ground, and need not reach Plaintiff's two remaining arguments.

Plaintiff contends that the Trust is defective for a variety of reasons. She claims that the Trust is "invalid *per se*" because the "Trustee's Authorized Signature" is blank on the one-page "Application for IRA" signed by decedent on April 18, 1996, which created the Trust. *See* Pl.'s Mot. for Summ. J., at 7. Plaintiff contends that the "IRA Trust Document express [sic] requires approval by the Trustee." Plaintiff cites, for example, the provision in the Trust application which states that "[a]n incomplete or unsigned form cannot be accepted." Pl.'s Mot. for Summ. J., Ex. B, at 1. More generally, Plaintiff argues that there is simply no evidence that the Trustee, Delaware Charter, ever took title to the IRA assets, or manifested acceptance of the Trust agreement, as required by law. Plaintiff contends that Delaware Charter's failure to take title to the Trust assets precludes identifying the underlying transaction as the creation of a trust.

■ "No particular form of words or conduct is necessary to manifest an intention to create a trust." *Cabaniss v. Cabaniss*, 464 A.2d 87, 91 (D.C.1983) (citing Restatement (Second) of Trusts § 23 & cmt. a). The settlor (in this case, decedent) need only manifest the "intention to create a trust." *Id.* This can be estab-lished through "written or spoken language or by conduct"; no legal terms of art are required. *Id.* Plaintiff does not appear to contest that decedent manifested the requisite intent to create the Trust.

■ However, the law of the District of Columbia does require that the trustee take title to the trust assets—whether such assets are in the form of bank accounts, securities or personal property—in order to create a trust. *See Ottenberg v. Ottenberg*, 194 F.Supp. 98, 102 (D.D.C. 1961) (internal citations omitted); *Cabaniss*, 464 A.2d at 91 (noting that trust property must be "held" by the trustee); Restatement (Second) of Trusts § 35 cmt. a ("If the owner of property intends to make a transfer of the property in trust but the title to the property does not pass to the intended trustee ..., no trust is created and the title to the property remains in the owner free of trust."). Absent title to the trust assets, the trustee cannot exercise any meaningful control over the trust res, and therefore there can be no "trust."

■ In the present case, Plaintiff contends that Delaware Charter did not take title to the Trust funds, so as to effectively place decedent's R–IRA account assets into trust. Plaintiff submits a declaration from Lawrence Judge, Lafayette Investment's administrative officer, stating that to his knowledge title was never transferred to Delaware Charter and that Lafayette Investments did not acknowledge Delaware Charter's right to exercise any control over the Trust funds. *See* Pl.'s Reply to Seebold's Opp'n, Ex. C (Decl. of Lawrence Judge), at 2.[11] Plaintiff also submits a Statement of Material Facts in [sic] Dispute, pursuant to Local Civil Rule 56.1, that "No transfer of title of decedent Byron Fielding's assets to Delaware Charter as trustee ever occurred."[12]

---

11. Mr. Judge states: "I have no knowledge of any document that transfers title of Byron Fielding's assets from B.T. Brown to Delaware Charter Guarantee & Trust Company.... Only Lafayette Investments could order the purchase or sale of securities for the IRA Account either by my instruction or by another of Byron Fielding's agents at Lafayette Investments." Pl.'s Reply to Seebold's Opp'n, Ex. C (Declaration of Lawrence Judge), at ¶¶ 7, 9.

12. The Court assumes that Plaintiff mistakenly referred to the facts listed in her Rule 56.1

Seebold fails to refute Plaintiff's claim. Seebold argues that "it is undisputed that Delaware Charter Guarantee & Trust, as trustee, took legal title to the assets delivered by Mr. Fielding, and placed the assets in Account # 274–82006 with Lafayette Investments." Seebold's Opp'n to Pl.'s Mot. for Summ. J., at 7. The only evidence Seebold points to in support of this claim is an exhibit which she states "reflect[s] Delaware Charter as Trustee of Mr. Fielding's R–IRA Trust Account." *Id.* However, the exhibit cited does not in any way support Seebold's claim. Its first page simply states in the upper right hand corner the following:

Guarantee & Trust Co. TTEE FBO

Byron Fielding R–IRA

DTD 4/22/96

4850 Reservoir Road NW

Washington, DC 20007–1561

Pl.'s Mot. for Summ. J., Ex. C, at 1. The five lines listed above contain the *only* reference to a "trust" in the entire account statement. Further, the name of the putative trustee, Delaware Charter, is not listed anywhere on the account statement.

In addition, Seebold's contention that it was Delaware Charter, rather than Lafayette Investments, which "placed the [IRA] assets in Account # 274–82006 with Lafayette Investment," not only lacks any evidentiary support, but is also directly refuted by the declaration of Mr. Judge. That declaration states, and Seebold has failed to contest, that "[o]n or about April 18, 1996 Byron Fielding came into [Lafayette Investment's] offices ... and executed an application for an IRA account.... Between April 22, 1996 and July 17, 1996, the checks [taken from decedent's previous tax-deferred funds] were deposited into B.T. Alex Brown bank accounts." Pl.'s Reply to Seebold's Opp'n, Ex. C, at ¶¶ 4, 6. From this chronology, there is simply no indication that Delaware Charter ever held title to the IRA assets, and Seebold has failed to produce even a scintilla of evidence to refute this fact.[13]

Accordingly, the Court concludes as a matter of law, on this record, that the Trust was not validly created because the Trustee did not take title to the Trust assets. Therefore, the Court must deny Seebold's motion for summary judgment. The Court grants partial summary judgment in favor of Plaintiff; to fully succeed on the merits, however, she must establish that she and decedent were common law husband and wife.[14]

## IV. Conclusion

Upon consideration of the relevant pleadings, and the entire record herein, for the reasons stated above, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [# 61] is **granted in part and denied in part;** and it is further

**ORDERED** that Defendant Jayne Seebold's Cross Motion for Summary Judgment [# 62] is **denied.** An order will issue with this Opinion.

---

Statement as "in dispute," when she meant to say that they were not in dispute. The Court notes that neither party complied with the requirement of Local Civil Rule 56.1 that Statements of Material Facts should "include references to the parts of the record relied on to support the statement." LCvR 56.1.

13. Even if Seebold had refuted this fact in her summary judgment pleadings, summary judgment against her would still be appropriate. Local Civil Rule 56.1 states: "In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Because Seebold fails in her Rule 56.1 Statement to controvert (or even discuss, for that matter) Plaintiff's contention that title was never transferred to Delaware Charter, this fact must be admitted as true for purposes of Plaintiff's motion for summary judgment. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145 (D.C.Cir.1996) ("the district court is to deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's" Rule 56.1 Statement).

14. *See supra,* note 9.

## MEMORANDUM ORDER

### DENYING DEFENDANT SEEBOLD'S MOTION FOR RECONSIDERATION

This matter comes before the Court on Defendant Jayne Seebold's Motion for Reconsideration [# 88] of this Court's Memorandum Opinion dated August 15, 2000.

 Defendant Seebold has filed a motion for reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60.[1] Such a motion should be granted only if the Court "finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir.1996) (internal citations and quotations omitted). In other words, the moving party (Seebold) must show "new facts or clear errors of law which compel the court to change its prior position." *National Ctr. for Mfg. Sciences v. Department of Defense*, 199 F.3d 507, 511 (D.C.Cir.2000) (internal citation omitted). A motion for reconsideration should not be granted if a party is simply attempting to renew factual or legal arguments that it asserted in its original briefs. *See Assassination Archives and Research Ctr. v. United States Dept. of Justice*, 828 F.Supp. 100, 101–102 (D.D.C.1993). "Reconsideration is not simply an opportunity to reargue facts and theories upon which a court has already ruled." *State of New York v. United States*, 880 F.Supp. 37, 38 (D.D.C.1995).

Seebold has failed to make the requisite showing. First, there has been no intervening change of law. Second, Seebold has failed to present any new evidence that was not previously available and which would alter this Court's conclusions as expressed in its Memorandum Opinion.[2] Finally, Seebold's motion for reconsideration has failed to establish a clear error of law or fact in the Court's Memorandum Opinion. Her motion merely restates or rephrases arguments that the Court has already rejected after careful consideration of the entire record. Further, Seebold has provided absolutely no reason why reconsideration would be necessary to prevent manifest injustice.

Accordingly, it is this 2nd day of October 2000

**ORDERED,** that Defendant Jayne Seebold's motion for reconsideration [# 88] is **DENIED.**

1. Seebold states that she is bringing her motion under the Superior Court Rules of Civil Procedure. *See* Mot. for Reconsideration, at 1. The Court will assume, however, that Seebold intends to bring her motion for reconsideration pursuant to the Federal Rules of Civil Procedure.

2. The only possible new evidence that Seebold presents is an affidavit from an officer of Delaware Charter Guarantee & Trust Company ("Delaware Charter"). However, Seebold herself concedes that the affidavit is not "newly discovered evidence." *See* Reply Mem., at 3. Moreover, even with the existence of the affidavit, Seebold still fails to present any express evidentiary support for her contention that title to the IRA Trust was properly transferred to Delaware Charter.