**RESERVES DEVELOPMENT LLC and The Reserves Development Corporation, Plaintiffs–Below, Appellants,**

v.

**SEVERN SAVINGS BANK, FSB, Alan J. Hyatt, Defendants Below, Appellees,**

and

**Bella Via, LLC, Defendant Below, Appellee/Cross Appellant,**

v.

**Reserves Development LLC and The Reserves Development Corporation, Plaintiffs–Below, Appellants/Cross Appellees.**

**No. 52, 2008.**

Supreme Court of Delaware.

Submitted: July 23, 2008.
Decided: Oct. 21, 2008.

**41.** Id.

Edward M. McNally, Esquire (argued) and Fotini A. Antoniadis, Esquire, and Corinne Elise Amato, Esquire, Morris James, LLP, Wilmington, DE, for Appellants/Cross Appellees.

Michael W. Arrington, Esquire (argued) of Parkowski, Guerke & Swayze, P.A., Wilmington, DE, for Appellees Severn Savings Bank, FSB and Alan J. Hyatt.

Richard E. Berl, Jr., Esquire (argued) of Smith O'Donnell Feinberg & Berl, LLP, Georgetown, DE, for Appellee/Cross Appellant Bella Via, LLC.

Before BERGER, JACOBS and RIDGELY, Justices.

BERGER, Justice:

In this appeal we consider whether the Court of Chancery properly exercised its discretion in granting limited equitable relief to appellants during the pendency of related litigation in the Superior Court. This case involves two actions, both arising from an unsuccessful effort to develop a residential community in Sussex County. Appellants, the owners and developers of the property, complain that they were forced to incur substantial expenses for development costs that appellee, Bella Via, LLC, was obligated to—but did not—pay. The Court of Chancery held that appel-

lants should be given "interim relief,"[1] and ordered the immediate transfer to appellants of approximately $320,000 from trust funds held by Bella Via's bank. We agree that appellants established their right to this relief based on the doctrine of unjust enrichment. We also conclude that the Court of Chancery did not abuse its discretion in limiting the scope of that equitable relief. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Reserves Development LLC and The Reserves Development Corporation (collectively, "Reserves") is the developer of a 185 home community in Sussex County known as "The Reserves." In March 2004, Reserves agreed to sell a parcel, containing 30 of the 71 unimproved lots in Phase II of the development, to Crystal Properties, LLC. Before the closing, in October 2004, Crystal assigned its rights under the Purchase and Sale Agreement ("PSA") to Bella Via.

Under the PSA, Bella Via paid $2.25 million for the 30 lots. In addition, Bella Via assumed responsibility for construction of the Phase II infrastructure, with the costs to be shared by Reserves in proportion to the parties' respective ownership interests. The PSA required that Bella Via deposit $1.5 million into an escrow account from which Reserves' share of the infrastructure costs would be paid. Severn Savings Bank, FSB loaned Bella Via the money to complete this transaction, and secured that loan with a mortgage on the 30 lots. Consistent with the loan terms, Bella Via entered into a Construction Trust Agreement ("CTA") with Severn's President, Alan J. Hyatt. The Construc-

tion Trust, of which Hyatt is the Trustee, was funded with $1.45 million, to be used to pay Bella Via's share of the infrastructure costs.

The trial court explained how the parties' agreements were intended to operate:

> Under the PSA, Bella Via, arguably with the cooperation of Reserves, bore the responsibility for obtaining a site contractor and securing a bond. The PSA contemplated that once Bella Via made arrangements for a site contractor, Bella Via would begin incurring costs regarding infrastructure for the Project. As the infrastructure construction progressed, Bella Via would submit invoices for 57.75% of the expenses to the Escrow Account. Assuming she had the approval of Bella Via, Severn, and Reserves, the Escrow Agent would disburse escrowed funds sufficient to pay Reserves' portion of the expenses directly to the contractor. In addition, under the CTA, Bella Via periodically would submit invoices to the Construction Trust for 42.25% of the infrastructure expenses incurred during the period covered. Assuming he received a favorable inspection, the Trustee would authorize payment to Bella Via of its portion of the expenses for remittance to the contractor.[2]

The intent and the reality significantly diverged. First, Bella Via did not find a site contractor, so Reserves contracted with Fresh Cut Custom Design Landscaping, Inc. to do that work. Bella Via was not a party to that contract. Second, Bella Via was unable to obtain a construction bond. In June 2005, Reserves posted $2.2 million cash in order to obtain letters of credit

1. *Reserves Dev. LLC and The Reserves Dev. Corp. v. Severn Savings Bank, FSB, Alan J. Hyatt and Bella Via, LLC,* 2007 WL 4644708 at *1 (Del.Ch.).

2. *Reserves Dev. LLC and The Reserves Dev. Corp. v. Severn Savings Bank, FSB, Alan J. Hyatt and Bella Via, LLC,* 2007 WL 4054231 at *4 (Del.Ch.).

from Wilmington Trust Co. Bella Via had assured Reserves that it would contribute its share of the cash, but failed to do so. Fresh Cut began work on the infrastructure in July 2005, and it submitted periodic applications for payment. Fresh Cut's work was inspected and the applications were approved, but Reserves was never reimbursed by Bella Via or the Construction Trust. From July until October 2005, Reserves paid all of the bonding, permitting and construction costs that were supposed to be shared proportionately with Bella Via.

In October 2005, Reserves decided to reduce the financial burden caused by Bella Via's refusal to contribute to the infrastructure costs. Without consulting Bella Via, Reserves entered into a Land Sales Contract with Christopher Glenn, President and sole stockholder of Fresh Cut, under which Reserves transferred to Glenn two lots located in Phase II of the project in payment for work done by Fresh Cut. In December 2005, Reserves executed an Assignment of Rights to Conveyance by Deed, which satisfied the October Land Sales Contract. The December Assignment provided that Reserves could satisfy future invoices from Fresh Cut by transferring additional lots to Glenn at a rate of one lot per $250,000 of invoiced work. By April 2006, Reserves had transferred 8 lots to Glenn (the "land swaps").

In November 2005, Reserves filed suit in the Superior Court against Crystal and Bella Via. The Superior Court action sought $1.6 million in damages for breach of contract, as well as punitive damages and declaratory relief. In October 2006, Reserves filed this action in the Court of Chancery against Bella Via, Severn and Hyatt. In its Amended Complaint, Reserves asked the Court of Chancery to: (1) order Severn and the Construction Trust

to make the payments due, together with interest; (2) enjoin Severn from foreclosing on its mortgage and substitute Reserves as the first lienholder on the 30 Bella Via lots; (3) remove Hyatt as Trustee of the Construction Trust; (4) award such other relief as may be appropriate; and, thereafter, (5) transfer the action to the Superior Court for a trial on additional damages. Reserves based its claims primarily on theories of unjust enrichment and equitable estoppel. The Court of Chancery granted Reserves some—but not all—of the relief it requested. Reserves appealed, seeking full equitable relief and pre-judgment interest. Bella Via cross-appealed, seeking reversal of the judgment granting partial relief to Reserves.

## DISCUSSION

■ We start with Bella Via's cross-appeal because, if it were successful, it would moot Reserves' direct appeal. Bella Via argues that Reserves should not be entitled to any form of equitable relief, because its relationship with Bella Via is governed by contract—the PSA. The trial court found, however, that the PSA does not govern here because Reserves proceeded in a manner inconsistent with the PSA. We agree. Reserves undertook primary responsibility to construct the infrastructure, and was unsuccessful in its contention that the parties had orally modified the PSA in accordance with Reserves' actions. Thus, Reserves' claim was a quasi-contract claim sounding in equity,[3] thereby making the extra-contractual equitable relief awarded here appropriate.

■ The remaining claims, raised by Reserves on its direct appeal, concern the extent of the relief granted by the Court of Chancery. Reserves complains that the

---

**3.** *See: Bakerman v. Sidney Frank Imp. Co.,* 2006 WL 3927242 (Del.Ch.).

trial court improperly applied the doctrine of unclean hands in denying Reserves approximately $765,000 compensation for the land swaps. But, as the trial court explained, unclean hands was not the only basis for its decision:

> Initially, I note the unclean hands defense did not constitute the sole basis for my decision to provide only limited relief to Reserves.... [T]he grounds for providing relief in the unique circumstances of this case were unjust enrichment and equitable estoppel. As to each of these theories, Reserves made a less convincing showing as to the payments it made only indirectly to Glenn by means of the land swaps. I considered that fact in fashioning appropriate equitable relief to address the situation of the parties in the interim before the adjudication of the merits of their underlying disputes in the companion litigation in the Superior Court.
>
> In addition, I disagree with Reserves' assertion that no injury whatsoever resulted to Defendants from the land swaps. The new evidence Reserves proffers to show the mechanics' lien claims that were made have been settled and the interested parties to the Fresh Cut bankruptcy proceeding have reduced the number of disputes among them by way of certain stipulations, confirms the land swaps did create additional uncertainty regarding the obligations of Reserves and, indirectly, Bella Via before those developments.
>
> \* \* \*
>
> Reserves relies on equitable principles to justify this Court's imposition of interim relief pending final disposition of the Superior Court action. Such relief is extraordinary and ... Reserves' unilateral decision to use the disputed land swap ... offends the same sense of equity to which it appeals. Thus, I decline to provide any additional relief.[4]

The Court of Chancery has broad discretion to fashion equitable relief.[5] We are satisfied that the court acted within its discretion in granting only partial interim relief to Reserves.

 Finally, Reserves argues that it is entitled to pre-judgment interest as a matter of right. The Court of Chancery decided, however, that Reserves had not properly requested that as part of its equitable relief. The Amended Complaint requests interest, but does not specify pre-judgment interest, and the parties did not address the issue in their post-trial briefing. Only after Reserves prepared a form of order that included pre-judgment interest did the parties (and the trial court) take up the matter. Given these circumstances, including the fact that the Superior Court could—and did—award pre-judgment interest in resolving the legal claims, the Court of Chancery concluded that Reserves' request for pre-judgment interest was untimely. We find no error in that determination.

## CONCLUSION

Based on the foregoing, the decisions of the Court of Chancery are hereby affirmed.

4. *Reserves Dev. LLC and The Reserves Dev. Corp. v. Severn Savings Bank, FSB, Alan J. Hyatt and Bella Via, LLC,* 2007 WL 4644708 at \*3–4 (Del.Ch.).

5. *Liberis v. Europa Cruises Corp.,* 1997 WL 725634 (Del.Supr.).