**In re the ETHEL F. PEIERLS CHARITABLE LEAD UNITRUST.**

**C.M. No. 16811–N–VCL.**

Court of Chancery of Delaware.

Submitted: Oct. 25, 2012.

Decided: Dec. 10, 2012.

Daniel F. Hayward, Gordon, Fournaris & Mammarella, P.A., Wilmington, Delaware; for Petitioners.

## OPINION

LASTER, Vice Chancellor.

The trustees of a Washington charitable trust have petitioned for orders (i) approving their resignations; (ii) confirming the appointment of Northern Trust Company of Delaware as successor trustee; (iii) confirming Delaware as the situs of the trust; (iv) determining that Delaware law governs the administration of the trust; (v) accepting jurisdiction over the trust; and (vi) reforming the trust. The first four requests seek impermissible advisory opinions. The Court accepts jurisdiction over the trust for the limited purpose of considering the application for reformation, which is denied. Jurisdiction over the trust is not retained.

## I. FACTUAL BACKGROUND

The petitioners are Brian E. Peierls and E. Jeffrey Peierls, who are the current trustees of a trust known as the Ethel F. Peierls Charitable Lead Unitrust (the "Trust"). Ethel, now deceased, was Brian and Jeffrey's mother. She settled the Trust under an agreement dated September 12, 1994, with Brian and Jeffrey as initial trustees (the "Trust Agreement"). The Trust currently holds cash and securities.

The Peierls Foundation (the "Foundation") is a charitable organization qualifying under Section 170(c) of the Internal Revenue Code, 26 U.S.C. § 170(c). The Trust Agreement provides that in each taxable year during the Trust term, an amount equal to six percent of the net fair market value of the Trust estate shall be paid to the Foundation (the "Unitrust Amount"). The Trust Agreement provides that if the Foundation ever ceases to qualify under Section 170(c), then the trustees shall select a successor organization that qualifies under Section 170(c) to receive the Unitrust Amount. Brian and Jeffrey have authority to designate one or more alternate qualifying organizations, other than the Foundation, to receive part or all of the Unitrust Amount.

The Trust will expire on September 12, 2029. The Trust Agreement provides that upon expiration, the Trust estate will be distributed as Brian directs pursuant to a limited power of appointment that may be exercised in favor of Brian's issue, one or more qualifying organizations, or the issue of Brian's father, Edgar. If Brian fails to exercise his power of appointment, then the Trust estate will be distributed as Jeffrey directs pursuant to a limited power of appointment by which Jeffrey must allocate beneficial interests in the Trust property, either outright or in trust, to Brian's issue, *per stirpes*.

The Foundation is thus the sole current beneficiary of the Trust. In light of Brian and Jeffrey's power to select alternative beneficiaries, one or more qualifying organizations are potential current beneficiaries of the Trust. Brian's adult sons, Ste-

fan Peierls and Derek Peierls, are the presumptive remainder beneficiaries of the Trust.

The current trustees are Brian and Jeffrey. The Trust Agreement provides that if Jeffrey ceases to serve as trustee, then Malcolm A. Moore, an attorney and trusted family advisor, shall serve as Jeffrey's successor trustee unless Brian and Jeffrey jointly designate one or more persons or corporations to serve as a successor trustee. The Trust Agreement provides that if Brian ceases to serve as trustee, there need not be a mandatory successor unless Brian and Jeffrey jointly designate a successor trustee.

Jeffrey and Brian wish to reform the Trust Agreement to convert the Trust into a directed trust. Under a new Article NINTH, the Trust Agreement would provide for the position of Investment Direction Adviser, with Jeffrey serving initially in that capacity. Proposed Section 9.2 provides that "[t]he Investment Direction Adviser shall hold and exercise the full power to manage the investments of the Trust. . . ." The same section requires that "[t]he Trustee shall follow the direction of the Investment Direction Adviser with respect to all matters relating to the management and investment of the assets of the Trust." Proposed Section 9.5 confirms that "[t]he Investment Direction Adviser shall have sole responsibility (and the Trustee shall have no responsibility) for the investment, voting and management of the assets of the Trust." Under current Section 6.8 of the Trust Agreement, "[n]either [Jeffrey] nor [Brian] shall receive any compensation for serving as Trustee. . . ." Under proposed Section 9.13, "[t]he Investment Direction Adviser may be entitled to reasonable compensation for its services as agreed upon by the Investment Direction Adviser and the

Trust Protector," a second new position to be created by the proposed revisions.

Under a new Article TENTH, the Trust Protector will have power (i) "to amend the administrative and technical provisions of the Trust at such times as the Trust Protector may deem appropriate for the proper administration of the Trust and for tax purposes," (ii) "to remove and appoint Trustees," and (iii) "to remove and appoint Investment Direction Advisers." Moore would serve initially as Trust Protector.

Jeffrey and Brian wish to have Northern Trust serve as sole trustee. The proposed changes make clear that Northern Trust will not have any responsibility for or involvement in the decisions made by the Investment Direction Adviser or Trust Protector. Under proposed Section 9.5, the trustee will have:

no duty to monitor the conduct of the Investment Direction Adviser, provide advice to the Investment Direction Adviser or consult with the Investment Direction Adviser or communicate with or warn or apprise any beneficiary or third party concerning instances in which the Trustee would or might have exercised the Trustee's own discretion in a manner different from the manner directed.

§ 9.5. Under the same section, the trustee "shall incur no liability for any act or failure to act by the Investment Direction Adviser, or for acting on a direction of the Investment Direction Adviser or with respect to its implementation of any such direction of the Investment Direction Adviser. . . ." Under proposed Section 9.4, the trustee has "no obligation to investigate or confirm the authenticity of directions it receives or the authority of the person or persons conveying them" and is "exonerated from any and all liability in relying on any such direction from a person purporting to be the Investment Direction Adviser without further inquiry by the Trustee."

Similar provisions apply to the trustee's relationship with the Trust Protector.

Proposed Section 9.7 requires the Trust to indemnify the Investment Direction Adviser, as long as either Jeffrey or Brian is serving in that capacity, for "all losses, costs, damages, expenses and charges, public and private, including reasonable attorneys' fees, including those arising from all litigation, groundless or otherwise, that result from the performance or nonperformance of the powers given to the Investment Direction Adviser." If anyone other than Jeffrey or Brian is serving as Investment Direction Adviser, then indemnification is only available "to the extent agreed upon by such Investment Direction Adviser, the Trustee, and those individuals with the authority to appoint Investment Direction Advisers." A parallel indemnification obligation covers the Trust Protector.

Ironically, because the petition contemplates that the changes to the Trust Agreement will be accomplished by judicial reformation, the Trust Agreement would remain dated as of September 12, 1994. It also would remain signed by the original signatories, including Ethel, the deceased settlor.

## II. LEGAL ANALYSIS

The relief sought by the petition falls into two categories: (i) four declaratory judgments and (ii) reformation of the trust. Both categories of relief are denied. Although the Court has accepted jurisdiction over the Trust for the limited purpose of considering reformation, jurisdiction is not retained.

### A. The Advisory Opinions

 The petition seeks orders (i) approving the petitioners' resignations as trustees; (ii) confirming the appointment of Northern Trust as successor trustee;

(iii) confirming Delaware as the situs of the trust; and (iv) determining that Delaware law governs the administration of the trust. Each of these actions can be accomplished, without judicial involvement, pursuant to the express terms of the Trust Agreement. As explained in a contemporaneously issued decision involving a related set of trust petitions, "[a] petition or request for judicial relief is not appropriate when the trust agreement expressly authorizes the contemplated action. Such a request consumes judicial resources unnecessarily and does not present a live dispute capable of resolution." *In re The Peierls Family Inter Vivos Trusts*, C.M. No. 16812, at 9 (Del. Ch. Dec. 10, 2012). A judicial declaration on these issues would constitute an impermissible advisory opinion. *See* 10 *Del. C.* § 6501; *Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, 303 A.2d 660, 662–63 (Del.1973).

Section 6.3.2 of the Trust Agreement provides that "[a]ny individual co-Trustee may, by written instrument delivered to all other then acting co-Trustees, relinquish his or her powers, rights or duties, to any extent and upon any terms." The complete relinquishment of powers, rights, and duties is synonymous with resignation. Brian and Jeffrey propose to resign as trustees. In conjunction with the petitions, Brian and Jeffrey have delivered their proposed resignations to each other (the current co-trustees), to Northern Trust (the successor trustee), to the Foundation (the current beneficiary), and to Stefan and Derek (the presumptive remainder beneficiaries).

Section 6.1 of the Trust Agreement authorizes Brian and Jeffrey to jointly designate by written instrument "one or more persons and/or a corporation to do [sic] a trust business to serve as successor to [Jeffrey] as Trustee. . . ." Brian and Jeffrey propose to exercise their authority,

before resigning, to designate Northern Trust as Jeffrey's successor.

Section 7.1 of the Trust Agreement addresses the Trust's situs. It states:

> The situs and place of administration ("situs") of the trust created under this Trust Agreement shall, as to real property held in trust, be the jurisdiction where such property is located. The situs of this trust shall, as to personal property, be (i) the location of the main business office of the Trustee who then has custody of the trust records, wherever the Trustee may locate that office, or (ii) any other situs (designated by the Trustee in a writing filed with the trust) that has sufficient contact with the trust to support jurisdiction of its courts over the trust. These provisions shall apply regardless of the Settlor's domicile at the execution of this instrument, or the domicile or residence of any Trustee or beneficiary.

§ 7.1. By written instrument dated September 12, 1994, Brian and Jeffrey originally designated Washington as the situs of the Trust. They can readily designate the State of Delaware as the situs of the Trust, or Northern Trust can do so as successor trustee.

Section 7.2 of the Trust Agreement addresses the law that governs the administration of the Trust. It states:

> Washington law shall govern the execution and construction of this Trust Agreement. The administration of this trust, however, shall be governed first by the provisions of this Trust Agreement, including any laws incorporated in this Trust Agreement by reference or otherwise made applicable by this Trust Agreement, and second, to the extent consistent with such provisions, the laws of the trust's situs.

§ 7.2. The language of this provision continues by stating that if another trust is created through the exercise of a power of appointment granted under the Trust Agreement, the validity of the appointment shall be governed by "(i) the law of the situs of this trust at the expiration of the trust term; or (ii) the law of any other jurisdiction designated by the donee of the power of appointment that has a substantial relation to this trust at the expiration of the trust term." Section 7.2 thus contemplates that the law governing administration will change with the situs of the trust, subject to the requirements of Section 7.2. If the situs of the trust is changed to Delaware, then Delaware law will govern the trust to the extent permitted by Section 7.2.

■■■ Each of the foregoing changes can be effectuated without judicial involvement by exercising powers expressly granted in the trust instrument. It constitutes reversible error for a trial court to have "addressed issues as to which there was no actual controversy." *Gannett Co., Inc. v. Bd. of Managers of the Del. Criminal Justice Info. Sys.*, 840 A.2d 1232, 1238 (Del.2003). "That all parties consented to jurisdiction is immaterial." *Stabler v. Ramsay*, 88 A.2d 546, 553 (Del.1952). To the extent the petition seeks these declarations, it is dismissed without prejudice.

**B. Reformation**

■■■ The petition next seeks an order reforming the Trust to include an array of additional administrative provisions. The petition does not seek a judicial modification of or deviation from the trust instrument. *See* 12 *Del. C.* § 3306 (recognizing judicial power to authorize deviation from trust instrument); *id.* § 3541 (authorizing *cy pres*); Restatement (Third) of Trusts § § 66–67 (2003) (discussing modification and *cy pres*).

"Trust reformation is an equitable remedy and is an ordinary remedy for mistake in the terms of a trust instrument." 90 C.J.S. Trusts § 92 (footnotes omitted). "A trust may be rescinded or reformed upon the same grounds as those upon which a transfer of property not in trust may be rescinded or reformed." Restatement (Third) of Trusts § 62. "Where no consideration is involved in the creation of a trust, it can be rescinded or reformed upon the same grounds, such as fraud, duress, undue influence, or mistake, as those upon which a gratuitous transfer of property not in trust can be rescinded or reformed." *Id.* cmt. a.

■ Delaware adheres to these principles and, with one exception, applies the traditional law of reformation to an application to reform a trust. *See Roos v. Roos,* 203 A.2d 140, 142 (Del.Ch.1964). "It is a basic principle of equity that the Court of Chancery has jurisdiction to reform a document to make it conform to the original intent of the parties." *Waggoner v. Laster,* 581 A.2d 1127, 1135 (Del.1990). Outside of the trust context, "reformation is appropriate only when the contract does not represent the parties' intent because of fraud, mutual mistake or, in exceptional cases, a unilateral mistake coupled with the other parties' knowing silence." *Emmert v. Prade,* 711 A.2d 1217, 1219 (Del. Ch.1997) (internal quotation marks omitted).

The doctrine of reformation for mistake with regard to trusts differs from instruments such as contracts in one important respect; in contract law, reformation will not be granted unless the parties' mistake is mutual, but mutuality of mistake is not always required where trusts are concerned, in that, because a settlor usually receives no consideration for the creation of a trust, a unilateral mistake on the part of the settlor is ordinarily sufficient to warrant reformation.

90 C.J.S. Trusts § 92 (footnote omitted); *accord Roos,* 203 A.2d at 142.

■ The Court of Chancery has the power to reform a voluntary trust instrument even after the death of the settlor, as long as the record "clearly and affirmatively establishes" the grounds for reformation. *Roos,* 203 A.2d at 143. Even when all parties to a case seek relief via consent petition, the petitioners must introduce "clear and convincing evidence of the decedent's intent" in order to obtain reformation. *In re Estate of Tuthill,* 754 A.2d 272, 273 (D.C.Ct.App.2000). "Even though a unilateral mistake by the settlor is a sufficient ground for reforming a trust that was created without any consideration, the burden is nonetheless on the party seeking reformation to establish by clear and convincing evidence the mistake." 90 C.J.S. Trusts § 92 (footnote omitted).

The petition does not contend that reformation is necessary to make the Trust Agreement conform to the intent of the settlor, nor does it advance any recognized basis for reforming the Trust. The petition openly admits that the parties are seeking reformation simply because they are dissatisfied with the administrative provisions in the Trust Agreement and would like to administer the Trust in a different manner. Convenience is not a valid ground for departing from the settlor's intent. The request for reformation is denied.

## C. Continuing Jurisdiction Over The Trusts

The petition asks the Court to accept jurisdiction over the trusts. The Court has exercised jurisdiction for purposes of ruling on the petition to the extent it seeks reformation. The Trust will not have any ongoing obligations to the Court, and the

trustees will not be submitting accountings. Accordingly, jurisdiction over the trust is not retained.

### III. CONCLUSION

The petition is denied. This matter is dismissed. **IT IS SO ORDERED.**