**In the Matter of PEIERLS FAMILY TESTAMENTARY TRUSTS.**

No. 11, 2013.

Supreme Court of Delaware.

Submitted: July 10, 2013.
Decided: Oct. 4, 2013.

Peter S. Gordon (argued), Gordon, Fournaris & Mammarella PA, Wilmington, Delaware, for appellant.

Collins J. Seitz (argued), Seitz Ross Aronstam & Moritz LLP, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

STEELE, Chief Justice:

This Opinion is one of a trilogy of opinions, issued concurrently, addressing issues arising out of Petitions, filed by members of the Peierls family, requesting the Court of Chancery to accept jurisdiction over, and then modify, thirteen (13) trusts created during the period 1953 through 2005. None of these trusts were created or settled under Delaware law, and none were ever administered in Delaware. The Petitioners sought relief under recently-adopted Court of Chancery Rules 100–103, inclusive, which were designed to create an orderly procedure for entertaining petitions to modify a trust. No respondent was named in the Petitions, which the Court of Chancery denied on various grounds, including lack of jurisdiction. The Petitioners appealed to this Court, which appointed Collins J. Seitz, as *amicus curiae* to brief and argue in opposition to the Petitions.[1]

This Opinion, in No. 11, 2013, addresses the issues arising out of the seven (7) Peierls family testamentary trusts. Our opinions in the companion cases, Nos. 12 and 13, 2013, respectively, address the charitable trust created by Ethel F. Peierls in 1994 and the five (5) Peierls *inter vivos* trusts. For the reasons next discussed, we affirm in part and reverse in part the judgment of the Court of Chancery.

## I. FACTUAL AND PROCEDURAL HISTORY

The Vice Chancellor's opinion describes in abundant detail the facts regarding the

---

1. The Court appreciates Mr. Seitz's service as *amicus curiae,* and commends him for the quality of his presentation, which is in the finest tradition of the Delaware Bar.

various trusts and parties. Below, we recite only the facts that are essential to our rulings.

## A. The Seven Testamentary Trusts

In his will dated June 30, 1960, supplemented by two codicils, Edgar S. Peierls, the father of Appellants Brian E. Peierls and E. Jeffrey Peierls, created two trusts. One trust was established for the benefit of Brian and the other for the benefit of Jeffrey. Edgar Peierls died on May 5, 1962 while a resident of New Jersey, where his will was also probated. Jeffrey is the sole current beneficiary of his trust while Brian and his children, Stefan and Derek, are the current beneficiaries of Brian's trust. By their terms, the trusts each require three trustees (two individuals and one institution). Currently, Brian, Jeffrey, and Northern Trust, a Delaware corporation, serve as trustees for both trusts. There is conflicting evidence about whether Philip J. Hirsch also serves as a trustee. The will's language contains no choice-of-law provision pertaining to the trusts. The Peierls' Petition asserts that New Jersey has been the situs of the trusts and that New Jersey law has governed the administration of the trusts since their inception. Moreover, the trusts are currently subject to the jurisdiction of the Superior Court of New Jersey, as evidenced by that court's order dated March 16, 2001 approving an intermediate accounting of the trusts and granting other relief. On September 13, 2012, the New Jersey court also issued a Succeeding Trustee Short Certificate (the "Certificate") identifying the trustees who accepted trusteeships of the trusts. Among those trustees was Northern Trust, a Delaware corporation. Consistent with the Vice Chancellor's opinion, we refer to this group of trusts as the "1960 Trusts."

Jennie N. Peierls, Appellants' grandmother, established a second pair of trusts in her will dated November 18, 1969, modified by a codicil dated November 22, 1972. She established one trust for the benefit of Brian and the other for the benefit of Jeffrey. Jennie Peierls died on January 6, 1974 while a resident of New York, where her will was probated. Jeffrey is the sole current beneficiary of his trust, while Brian and his children, Stefan and Derek, are the current beneficiaries of Brian's trust. By the terms of the will, the trusts each require three trustees (two individuals and one institution). Currently, Jeffrey, Malcolm A. Moore, and U.S. Trust Company of Texas serve as trustees of both trusts. The will adopts no choice-of-law provision for the trusts. The Peierls' Petition asserts that New York was the original situs of the trusts and that New York law initially governed their administration. Appellants further explain that in a September 23, 1999 Order, a Texas Probate Court accepted jurisdiction over the trusts and moved the situs of the trusts from New York to Texas. The Texas court's order also approved the substitution of U.S. Trust Company of Texas as trustee for U.S. Trust Company of New York. Appellants then returned to the New York court and on March 29, 2000, obtained an order officially transferring the trusts' situs from New York to Texas and approving the new corporate trustee. In 2001, the Texas court issued an order declaring that Texas law governs the administration of the trusts while New York law continues to govern the validity and construction of the trusts. Consistent with the Vice Chancellor's opinion, we refer to this group of trusts as the "1969 Trusts."

Brian's wife, Elizabeth Peierls, created three trusts in her will dated April 4, 2005. Elizabeth Peierls died on June 28, 2005, but Appellants have not provided any information relating to their mother's resi-

dence at the time of her death or where her will was probated, although we believe these events likely occurred in Texas. Marital Trust No. 1 and Marital Trust No. 2 name Brian as the sole beneficiary, while the By–Pass Trust names Brian, and his children, Stefan and Derek, as beneficiaries. Brian serves as the sole trustee of all three trusts. Importantly, Elizabeth's will includes an explicit choice-of-law provision regarding the administration of the trusts, which states: "Unless the situs of any trust is changed, the laws of the State of Texas shall control the administration and validity of any trust."[2] Further, Part Two, Article 3, Paragraph 3.1(u) provides that Texas "shall be and is fixed" as the situs of the trusts. That same Paragraph 3.1(u), however, also creates an exception:

> [I]f the Trustee shall be or become a resident of or have principal place of business in a state other than Texas, the situs of the trust may be changed to the place of residence of an individual Trustee who is serving alone as sole Trustee or to the place of business of a corporate trustee if one is serving as sole or Co–Trustee.[3]

Consistent with the Vice Chancellor's opinion, we refer to this group of trusts as the "2005 Trusts."

### B. The Trust Petitions

The Peierls' Petitions for all seven Trusts are essentially the same and their requests for relief are identical to those made for the *inter vivos* trusts which we address in *In re Peierls Family Inter Vivos Trusts.*[4] The Petitions all request that the Court of Chancery: (1) approve the resignation of the current trustee; (2) confirm the appointment of Northern Trust Company as the sole trustee; (3) determine that Delaware law governs the administration of each Trust; (4) confirm Delaware as the situs for each Trust; (5) reform the Trusts' administrative scheme; and (6) accept jurisdiction over the Trusts. The Petitions are motivated by the Peierls' general frustration with the corporate trustees' lack of communication and responsiveness regarding the handling of trust assets, as well as the Peierls' desire to "seek[ ] a better, more efficient structure."[5]

### II. STANDARD OF REVIEW

■ The Court of Chancery recently adopted Rules 100–103 in an effort to clarify the requirements necessary to file a consent petition to modify a trust and invoke the court's equitable powers.[6] We review cases involving the Court of Chancery's exercise of its equitable powers for abuse of discretion.[7] However, in so doing, we review the Court of Chancery's legal conclusions *de novo.*[8]

2. App. to Amicus Br. at B1282.

3. *Id.*

4. *See In re Peierls Inter Vivos Family Trusts,* 77 A.3d 249, 2013 WL 5539329 (Del.2013).

5. App. to Amicus Br. at B173.

6. App. to Opening Br. at A42 (citing Consent Petition Committee of the Delaware Bar Association, *Report to the Court of Chancery of the State of Delaware on the Matter of Consent Petitions* (Mar. 8, 2010) ("[Chancery Court's]

equitable power ... allows it to reform a trust.")).

7. *Reserves Dev. LLC v. Severn Sav. Bank, FSB,* 961 A.2d 521, 523 (Del.2008); *In re Unfunded Ins. Trust Agreement of Capaldi,* 870 A.2d 493, 497 (Del.2005).

8. *Lawson v. Meconi,* 897 A.2d 740, 743 (Del. 2006). *See also Scion Breckenridge Managing Member, LLC v. ASB Allegiance Estate Fund,* 68 A.3d 665, 675 (Del.2013); *SV Inv. Partners, LLC v. ThoughtWorks, Inc.,* 37 A.3d 205, 209–10 (Del.2011).

## III.  ANALYSIS

The Court of Chancery declined to address the merits of the Petitions.  Although the Vice Chancellor found that the Court of Chancery had jurisdiction to entertain the Petitions, he concluded that the policy of interstate comity compelled him to avoid adjudicating an issue that a different court could better address.  For the sake of clarity, we note that the issue of whether the Court of Chancery had and could exercise jurisdiction to entertain the Petitions is separate from whether the Court of Chancery could "accept" jurisdiction over the Trusts, as the Petitions requested.  Here, because both issues involve questions of administration of the Trusts, the analysis is similar.  But, the former issue denotes a single adjudicatory event while the latter refers to an ongoing exercise of judicial oversight.  Because the Court of Chancery limited its analysis to the first issue and declined to reach the second, we do likewise.

### A.  Did the Court of Chancery Properly Decline to Exercise Jurisdiction and Abstain from Ruling on the Trust Petitions?

### 1.  Did The Court of Chancery Have Jurisdiction Over the Trusts?

The Court of Chancery adeptly noted that the parties' express consent to jurisdiction satisfies the Due Process Clause with respect to exercising personal jurisdiction.  That court further recognized that "[it had] the power to address the petitions." [9]  In cases such as these where a trust maintains contacts with multiple states, we prefer to consult the *Restatement (Second) of Conflict of Laws* to resolve the issue of jurisdiction.

As we previously recognized in the *inter vivos* trust context, all matters "which relate to the management of the trust" are considered administrative matters.[10]  The Peierls' Petitions here mirror in substance petitions previously analyzed in the *inter vivos* context.  In one of our companion cases involving the Peierls' *inter vivos* trusts, we held that all of the requests made in those Petitions related to matters of administration.[11]  Because the Petitions referring to the testamentary trusts are practically identical to those in the *inter vivos* context, we find that these requests also relate to matters of administration.  Having decided that the Peierls' Petitions, if entertained, would require the Vice Chancellor to rule on issues of the Trusts' administration, we must address which courts have jurisdiction over administration of those Trusts.

Section 267 of the *Restatement* addresses the issue of which court has jurisdiction over the administration of a trust.  The *Restatement* instructs that "[w]here the trustee has qualified as trustee in a particular court, that court usually has a continuing jurisdiction over the administration of the trust." [12]  "Even though the trustee has qualified as trustee in a court, its jurisdiction is *not exclusive* and the courts of other states may exercise jurisdiction in proper cases if they have jurisdiction over the trustee, or if they have jurisdiction over trust assets insofar as interests in those assets are concerned." [13]

---

9.  *In re Peierls Family Testamentary Trusts*, 58 A.3d 985, 988–89 (Del.Ch.2012).

10.  *Restatement (Second) of Conflict of Laws* § 271 cmt. a (1971).

11.  *In re Peierls Family Inter Vivos Trusts*, 77 A.3d 249, 255–56, 2013 WL 5539329 (Del. 2013).

12.  *Restatement (Second) Conflict of Laws* § 267 cmt. d.

13.  *Id.* (emphasis added).

As the Vice Chancellor noted, all interested parties consented to the Court of Chancery's jurisdiction: Trustees Brian and Jeffrey filed the Petitions in the Court of Chancery; the beneficiaries provided written consents to the court's jurisdiction; Northern Trust is a Delaware entity; and Bank of America (corporate successor to U.S. Trust Co.), though not subjecting itself to jurisdiction, filed written acknowledgment of its removal as corporate trustee.[14] Having obtained jurisdiction over the trustees, the Court of Chancery had jurisdiction to adjudicate issues of administration of the Trusts under the *Restatement*. The question remains, however, whether this is a proper case to exercise that jurisdiction.

### 2. Should the Court of Chancery Have Exercised Jurisdiction to Rule on the Trusts' Petitions?

▮ Distinct from whether the Court of Chancery had jurisdiction to evaluate the Petitions is the issue of whether the Vice Chancellor should have exercised jurisdiction to do so. This question is largely one of which court has "primary supervision" over the Trusts. One indication that a particular court has primary supervision over the administration of a trust is if "the trustee is required to render regular accountings in the court in which he has qualified."[15] If the court in which the trustee has qualified "does not exercise active control over the administration of the trust," then the court of the place of administration "may exercise primary supervision."[16] A court having primary supervisory power "[has] and will exercise jurisdiction as to all questions which may arise in the administration of a trust."[17]

The *Restatement* further recognizes the need to "promote comity and respect for other states' laws":[18]

A court of a state other than that of the testator's domicil or that in which the trust is to be administered will not exercise jurisdiction if to do so would be an undue interference with the supervision of the trust by the court which has primary supervision. Whether there is such interference depends on the relief sought. Thus, if a court acquires jurisdiction over the trustee it may entertain a suit to compel him to redress a breach of trust, even though the trustee has qualified as trustee in a court of another state or the administration of the trust is in another state. It may compel the trustee to render an accounting or it may even remove the trustee. On the other hand, *it will ordinarily decline to deal with questions of construction or validity or administration of the trust, leaving these matters to be dealt with by the court of primary supervision.* Thus, it will not ordinarily give instructions to the trustee as to his powers and duties.[19]

Having adopted the *Restatement's* governing precept regarding which court has primary jurisdiction over the administration of a trust, we next analyze whether the Vice Chancellor properly declined to exercise jurisdiction and address the Petitions.

14. *Peierls Family Testamentary Trusts*, 58 A.3d at 989.

15. *Restatement (Second) of Conflict of Laws* § 267 cmt. e.

16. *Id.*

17. *Id.*

18. *Peierls Family Testamentary Trusts*, 58 A.3d at 988.

19. *Restatement (Second) of Conflict of Laws* § 267 cmt. e (emphasis added).

### B. The 1960 Trusts

█ Initially, we clarify that the 1960 Trusts are currently overseen by three trustees—Brian Peierls, Jeffrey Peierls, and Northern Trust. Brian and Jeffrey purportedly resigned as trustees. Their resignations, however, are ineffective because they require the approval of the Court of Chancery—a request that the court declined to even address. On the other hand, the removal of the former corporate trustee, U.S. Trust Company of New York, is a valid exercise of the trustee's powers under the trust instrument and does not require a judicial endorsement. The removal and appointment of U.S. Trust Company of New York, however, only become "effective upon the written acceptance" of Northern Trust as the new corporate trustee. Northern Trust's acceptance of its appointment relied on the "certification of the Superior Court of New Jersey," which Northern Trust received on September 13, 2012. Thus, the appointment of a corporate trustee here does not involve hurdles encountered in the other Trusts. The evidence is conflicting over whether Philip J. Hirsch is currently a trustee. The Superior Court of New Jersey's Certificate lists Hirsch as a trustee, but the Petition in the Court of Chancery does not identify Hirsch as serving in any capacity.

The Petition avers that the testator died while a resident of New Jersey and that "New Jersey has been the situs of the Trusts and New Jersey law has governed the administration of the Trusts since their inception." [20] The Vice Chancellor aptly noted, though, that the Petitioners misinterpret the effect of the New Jersey court's Certificate.[21] The Certificate *does* not provide for a change in the place of administration—the Trusts' situs—or a change in the law governing administration of the Trusts. The Certificate *does* officially name Northern Trust, a Delaware corporation, as trustee. Simply stated, at this point in time, the 1960 Trusts are administered in New Jersey pursuant to New Jersey law by three (or four) trustees, one of which happens to be a Delaware corporation.

The record reflects that the Superior Court of New Jersey continues to supervise the 1960 Trusts. Several factors necessitate that conclusion. The Trusts have had numerous interactions with the Superior Court of New Jersey. The trustee at the time, Banker's Trust Co., on March 16, 2001 submitted a fourth intermediate accounting of the Trusts established under Article 6 of the will (the Trusts that named Brian and Jeffrey as beneficiaries). Although Petitioners do not allege that they have had any further accountings or interactions with the New Jersey court since 2001, in fact the trustee rendered a *fourth* accounting in 2001. That fact, plus the fact that that accounting was *intermediate,* suggest that the New Jersey court had primary supervision over the Trusts.[22] The trustees' return to the New Jersey court in September 2012 to substitute the corporate trustee further bolsters that conclusion.

█ Having concluded that New Jersey is the place of primary supervision, it is for New Jersey's courts, and not Delaware's, to "exercise jurisdiction as to all questions which may arise in the administration of

---

**20.** App. to Ans. Br. at B1020.

**21.** *Peierls Family Testamentary Trusts,* 58 A.3d 985.

**22.** *Restatement (Second) of Conflict of Laws* § 267 cmt. e (stating that requiring accountings is an indicator of primary supervision).

the trust,"[23] including those requests made by the Petitioners. It undoubtedly would create undue interference for Delaware's courts to exercise jurisdiction in circumstances where New Jersey's courts retain primary supervision over the 1960 Trusts, especially where, as here, the Petitions would require the Vice Chancellor to evaluate matters of administration. We therefore uphold the Vice Chancellor's decision not to address the Petition in so far as it relates to the 1960 Trusts, because the New Jersey court retains primary supervision over those Trusts.

## C. The 1969 Trusts

▮ Currently, Jeffrey and Malcolm serve as the individual trustees for the 1969 Trusts. Jeffrey is a resident of New Jersey and Malcolm is a resident of Washington State. Both Jeffrey's and Malcolm's resignations require the Court of Chancery's judicial approval to take effect. Absent that approval—an issue which the Vice Chancellor never addressed—Jeffrey and Malcolm remain trustees. Similarly, the removal of U.S. Trust Company of Texas and the appointment of Northern Trust as corporate trustee are conditioned upon Northern Trust's written acceptance. That acceptance is itself contingent upon the issuance of an order by the Court of Chancery confirming the appointment of Northern Trust. Unless and until that court first confirms the appointment, Northern Trust remains on the sidelines while U.S. Trust Company of Texas remains the corporate trustee.

At their inception after Jennie's death in 1974, the 1969 Trusts were administered in New York, under New York law. The Trusts are now sitused in Texas after the

individual trustees played a "pitch and catch" between New York and Texas courts from 1999 to 2001. On September 23, 1999, Jeffrey and Malcolm appeared before a Texas Probate Court and petitioned the court to "exercise jurisdiction with respect to the Trusts and to make certain determinations relating to the administration of the Trusts."[24] The Texas court exercised jurisdiction, confirmed a change in the Trusts' situs to Texas, and appointed U.S. Trust Company of Texas as the corporate trustee. The Texas court continued the matter, "pending action in the [New York] Court with respect to the replacement of U.S. Trust New York by U.S. Trust Texas and the change in the situs of the Trusts."[25] Petitioners then visited the Surrogate's Court for the State of New York and received, on March 29, 2000, an order approving the transfer of the Trusts' situs and the appointment of U.S. Trust Company of Texas as corporate trustee.[26] Petitioners again paid a visit to the Texas Probate Court at which time that court reiterated its earlier findings and declared that Texas law governed the administration of the trust in an order dated May 18, 2001.

Except for the two appearances in the Texas Probate Court to effectuate the transfer of the Trusts, there is no record evidence of any interaction with the Texas courts after 2001. There is no evidence of continuing accountings to the Texas Probate Court as there was in the New Jersey courts for the 1960 Trusts, nor is there evidence of other interactions with the Texas judiciary that would suggest that the Texas Probate Court has primary supervision over the Trusts. It would appear that the Texas court does not exer-

---

23. *Id.* § 267 cmt. e.

24. App. to Answering Br. at B277.

25. *Id.* at B278.

26. *Id.* at B280–82.

cise active control over the Trusts, but, rather, was called upon simply to carry out the trustees' "pitch and catch" plan to move the Trusts' situs to Texas. Because the Texas Probate Court's jurisdiction over the 1969 Trusts is not exclusive, and because of the absence of evidence that any court retains primary supervision over the Trusts, no interstate comity concern prevents the Court of Chancery—which has personal jurisdiction over the trustees—from entertaining the Petitions. Therefore, we conclude that the Vice Chancellor erred in determining that he could not exercise jurisdiction over the 1969 Trusts and address the Petition's merits.

■ We do not remand this matter to the Court of Chancery because, based on our determinations in the related two cases before us, the likelihood of Petitioners obtaining relief would be minimal. The Texas Probate Court's order plainly states that the Trust is sitused in Texas and that Texas law governs its administration. Therefore, any claim for reformation is a question of Texas law, which was not briefed or argued before the Vice Chancellor. Equally futile would be any action by the Vice Chancellor with respect to the request to approve the trustees' resignations and the appointment of Northern Trust as corporate trustee. The will expressly authorizes for the removal and appointment by the individual trustees of a

successor corporate trustee, making any judicial ruling on the issue an impermissible advisory opinion.[27] Although the codicil revokes Article Sixth of the will in its entirety and provides substitute language, that language evidences the testator's intent to keep intact a trustee structure combining individual and corporate trustees.[28]

Thus, Petitioners put the cart before the horse. The Trusts must first be reformed to provide for only one trustee before the resignations can become effective. Given these jurisdictional deficiencies, rather than order a futile remand to the Vice Chancellor, we invite Petitioners to play "pitch and catch"—this time between the Texas Probate Court and the Delaware Court of Chancery—to first change the Trusts' situs as well as the law governing their administration. To reiterate, the appointment of Northern Trust can be accomplished without judicial oversight. This proposed course of action will place the Court of Chancery in a much better position jurisdictionally to evaluate the requests for reformation and the request to accept continuing jurisdiction over the Trusts.

### D. The 2005 Trusts

It is well-settled that this Court "will not review legal issues on appeal that are not fully and fairly briefed" unless the inter-

27. *See In re Peierls Family Inter Vivos Trusts,* 77 A.3d 249, 266–67, 2013 WL 5539329 (Del. 2013); *In re Ethel F. Peierls Charitable Lead Unitrust,* 77 A.3d 232, 235–37, 2013 WL 5526243 (Del.2013).

28. Article Sixth of the original will expressly stated: "I direct that there shall always be one corporate and two individual fiduciaries hereunder." The codicil, dated November 18, 1969, revokes Article Sixth of the original will and provides language to substitute in lieu of the original. Within the codicil, how-

ever, the testator appoints as initial trustees two individuals and one institution. Moreover, when discussing the ability to remove and appoint a successor corporate trustee, the new Article Sixth "authorize[s] and empower[s] *the* individual ... Trustee(s) at any time qualified hereunder to remove *the* corporate fiduciary...." (emphasis added). The use of the "(s)" accompanying term Trustee indicates that perhaps one individual trustee is sufficient. Still, the use of "the individual" and "the corporate fiduciary" suggests that there always be some combination of both.

ests of justice compel us to address them.[29] "When addressing the Court of Chancery's ruling on jurisdiction in their brief, Petitioners specifically discuss the 1960 and 1969 Trusts, but fail to analyze, distinguish, or even mention the 2005 Trusts. The interests of justice would not be served by our addressing the issue of jurisdiction over the 2005 Trusts. We agree with the Vice Chancellor that the Petition, in so far as it relates to the 2005 Trusts, does not provide sufficient information for this Court to proceed further." [30] Accordingly, we uphold the Vice Chancellor's declination to exercise jurisdiction over the 2005 Trusts.

## IV. CONCLUSION

Accordingly, we AFFIRM in part and REVERSE in part the Court of Chancery's judgment. Jurisdiction is not retained.

29. *Smith v. Delaware State Univ.*, 47 A.3d 472, 479 (Del.2012); *Roca v. E.I. DuPont de Nemours and Co.*, 842 A.2d 1238, 1242 (Del.2004) ("The rules of this Court specifically require an appellant to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief. If an appellant fails to comply with these require-

ments on a particular issue, the appellant has abandoned that issue on appeal irrespective of how well the issue was preserved at trial.").

30. *In re Peierls Family Testamentary Trusts*, 58 A.3d 985, 991 (Del.Ch.2012).