**In the Matter of Ethel F. PEIERLS CHARITABLE LEAD UNITRUST.**

No. 12, 2013.

Supreme Court of Delaware.

Submitted: July 10, 2013.

Decided: Oct. 4, 2013.

---

Peter S. Gordon (argued), Gordon, Fournaris & Mammarella PA, Wilmington, Delaware for appellant.

Collins J. Seitz (argued), Seitz Ross Aronstam & Moritz LLP, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

STEELE, Chief Justice:

This Opinion is one of a trilogy of opinions, issued concurrently, addressing issues arising out of Petitions, filed by members of the Peierls family, requesting the Court of Chancery to accept jurisdiction over, and then modify, thirteen (13) trusts created during the period 1953 through 2005. None of these trusts were created or settled under Delaware law, and none were ever administered in Delaware. The Petitioners sought relief under recently-adopted Court of Chancery Rules 100–103, inclusive, which were designed to create an orderly procedure for entertaining petitions to modify a trust. No respondent was named in the Petitions, which the Court of Chancery denied on various

grounds, including lack of jurisdiction. The Petitioners appealed to this Court, which appointed Collins J. Seitz, as *amicus curiae* to brief and argue in opposition to the Petitions.[1]

This Opinion, in No. 12, 2013, addresses the issues arising out of the Ethel F. Peierls Charitable Lead Unitrust. Our opinions in the companion cases, Nos. 11 and 13, 2013, respectively, address the seven (7) Peierls testamentary trusts and the five (5) Peierls *inter vivos* trusts. For the reasons next discussed, we affirm the judgment of the Court of Chancery.

## I. FACTUAL AND PROCEDURAL HISTORY

Appellants, Brian E. Peierls and E. Jeffrey Peierls are the current trustees of the Ethel F. Peierls Charitable Lead Unitrust. The facts, which are set forth in the Vice Chancellor's opinion, are adopted in large part in this Opinion as well.

### A. The Charitable Trust

On September 12, 1994, Ethel F. Peierls settled a charitable trust and named her sons, Brian and Jeffrey, as initial trustees (the "Trust"). The Trust Agreement provides that each taxable year the Trust will pay an amount equal to six percent of the net fair market value of the Trust estate to the Peierls Foundation (the "Foundation"). The Foundation is a charitable organization qualified under Section 170(c) of the Internal Revenue Code. Should the Foundation fail to qualify as a Section 107(c) charitable organization, the Trust Agreement authorizes the trustees to designate alternative Section 170(c) organizations to receive all or part of the Trust's disbursements.

The Trust Term is 35 years and will expire on September 12, 2029. Upon the term's expiration, the Trust Agreement grants Brian a limited testamentary power of appointment to direct the Trust's remaining funds to either his children, to one or more qualifying organizations, or to Brian's father's issue. The Trust Agreement further outlines a distribution plan in the event that Brian fails to exercise his power of appointment.

At this time, the Foundation is the Trust's sole beneficiary, though the trustees are empowered to select additional qualifying organizations as beneficiaries. Brian and Jeffrey currently serve as trustees, and the Trust Agreement provides a specific succession plan should either of them cease to serve as trustee. The Trust Agreement also grants the trustees the power to appoint a successor or a co-trustee.

### B. The Trust Petition

As is the case with the other Petitions in this Peierls trust trilogy, the Petitioners request that the Court of Chancery: (1) approve the resignation of the current trustees; (2) confirm the appointment of Northern Trust Company as the sole trustee; (3) determine that Delaware law governs the administration of the Trust; (4) confirm Delaware as the situs for the Trust; (5) reform the Trust's administrative scheme; and (6) accept jurisdiction over the Trust.[2] The resignations of the Trust's current trustees accompany the Petition and are expressly conditioned on the Court of Chancery's approval. Northern Trust's acceptance of its appointment as the new corporate trustee is also expressly conditioned on the Court of Chancery's approval.

---

1. The Court appreciates Mr. Seitz's service as *amicus curiae,* and commends him for the quality of his presentation, which is in the finest tradition of the Delaware Bar.

2. The Court of Chancery opinion contains a comprehensive description of the requested new administrative structure and requested modifications.

## II. STANDARD OF REVIEW

█ The Court of Chancery recently adopted Rules 100–103 to provide a new avenue for Petitioners to utilize that court's equitable powers to reform a trust instrument.[3] We review cases involving the Court of Chancery's exercise of its equitable powers for abuse of discretion.[4] In doing so, we review its legal conclusions *de novo*.[5]

## III. ANALYSIS

**A. The Vice Chancellor Properly Concluded That No Actual Controversy Exists Related to the Approval of Trustee Resignations, the Appointment of a New Corporate Trustee, the Confirmation of Delaware as the Situs, or the Declaration that Delaware Law Governs the Administration of the Trust, And That Any Such Judicial Decision Would Constitute an Advisory Opinion.**

█ The Petition requests that the Court of Chancery (i) approve the resigna-tions of Brian and Jeffrey as trustees; (ii) confirm Northern Trust as the newly appointed trustee; (iii) declare that Delaware is the situs of the Trust; and (iv) declare that Delaware law governs the Trust.

█ As we have earlier stated, in the *inter vivos* context "a case must present an actual controversy in order to obtain a declaratory judgment."[6] The Vice Chancellor noted the risk of addressing issues in the absence of an actual controversy: "It constitutes reversible error for a trial court to have 'addressed issues as to which there was no actual controversy.'"[7] We consider the Petitioners' requests with that precept in mind.

The Vice Chancellor properly concluded that no actual controversy exists with respect to the requested approval of the trustees' resignations and the confirmation of Northern Trust as the successor trustee. Section 6.3.2 of the Trust Agreement provides: "Any individual co-Trustee may, by written instrument delivered to all other then acting co-Trustees, relinquish his or her powers, rights or duties, to any

---

3. App. to Opening Br. at A42 (citing Consent Petition Committee of the Delaware Bar Association, *Report to the Court of Chancery of the State of Delaware on the Matter of Consent Petitions* (Mar. 8, 2010)) ("[Chancery Court's] equitable power ... allows it to reform a trust.").

4. *Reserves Dev. LLC v. Severn Sav. Bank, FSB*, 961 A.2d 521, 523 (Del.2008); *In re Unfunded Ins. Trust Agreement of Capaldi*, 870 A.2d 493, 497 (Del.2005).

5. *Lawson v. Meconi*, 897 A.2d 740, 743 (Del. 2006); *see also Scion Breckenridge Managing Member, LLC v. ASB Allegiance Estate Fund*, 68 A.3d 665, 675 (Del.2013); *SV Inv. Partners, LLC v. ThoughtWorks, Inc.*, 37 A.3d 205, 209–10 (Del.2011).

6. *In re Peierls Family Inter Vivos Trusts*, at 266. This Court adopted the following pre-requisites necessary for an "actual controversy" to exist:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.

*Rollins Int'l Inc. v. In'l Hydronics Corp.*, 303 A.2d 660, 662–63 (Del.1973).

7. *In re Ethel F. Peierls Charitable Lead Unitrust*, 59 A.3d 464, 469 (Del.Ch.2012) (citing *Gannett Co., Inc. v. Bd. Of Managers of the Del. Criminal Justice Info. Sys.*, 840 A.2d 1232, 1238 (Del.2003)).

extent and upon any terms." As common sense dictates, and the Vice Chancellor found, a "complete relinquishment of powers rights, and duties is synonymous with resignation."[8] Nowhere does the Trust Agreement expressly or implicitly require judicial approval for the resignations to become effective. The trustees here have essentially attempted to create their own controversy by conditioning their resignations on the express approval of the Court of Chancery—an approval that the Trust Agreement does not require.

Similarly, Section 6.1 of the Trust Agreement provides an express authorization for the current trustees to appoint a successor. That provision states that "Jeffrey ... and Brian [may] jointly designate[ ], by an instrument in writing filed with the trust records, one or more persons and/or a corporation to do a trust business to serve as successor to [Jeffrey] as trustee...." Again, nowhere in the Trust language can a requirement that the appointment be conditioned on judicial approval be found.

■ The Petition also requests that the Court of Chancery declare Delaware the situs of the Trust. Section 7.1 of the Trust Agreement governs the Trust's situs:

> The situs and place of administration ("situs") of the trust created under this Trust Agreement shall, as to real property held in trust, be the jurisdiction where such property is located. The situs of this trust shall, as to personal property, be (i) the location of the main business office of the Trustee who then has custody of the trust records, wherever the Trustee may locate that office, or (ii) any other situs (designated by the Trustee in a writing filed with the trust) that has sufficient contact with the trust

to support jurisdiction of its courts over the trust. These provisions shall apply regardless of the Settlor's domicile at the execution of this instrument or the domicile or residence of any Trustee or beneficiary.

The Trust holds no real property. "The Trust consists of a diverse portfolio of marketable securities, as well as a significant amount of cash."[9] Thus, personal property is the only asset of concern. Assuming that Northern Trust has an office in Delaware that would take custody of the trust records, it would appear that upon the appointment of Northern Trust, coupled with the resignations of Jeffrey and Brian, the situs of the Trust would automatically move to Delaware under the express terms of the Trust.

If Petitioners are not convinced that this would be the case, they may instruct Northern Trust to file with the Trust a written declaration that the Trust's situs is Delaware. Conceivably Petitioners may be uncomfortable filing such a declaration, without Northern Trust in place as a trustee out of concern that the Trust lacks sufficient contacts with Delaware to justify designating Delaware as the Trust's situs. But there is precedent for proceeding in this manner. Should the Petitioners redraft and execute their resignations and appoint Northern Trust, and then instruct the new corporate trustee to file a written instrument transferring the Trust's situs, they will follow the same course of action adopted by the Peierls when they named Washington as the Trust's situs in 1994, without any judicial approval. Because "[Brian and Jeffrey] can readily designate the State of Delaware as the situs of the Trust, or Northern Trust can do [it] as

---

8. *Charitable Lead Unitrust,* 59 A.3d at 468.

9. App. to Amicus Br. at B335.

successor trustee,"[10] we conclude that there is no "actual controversy" related to the Trust's situs. We therefore affirm the Vice Chancellor's judgment on this request.

■ Lastly we address the Petitioners' request that the Vice Chancellor declare that Delaware law governs the administration of the Trust. Section 7.2 of the Trust provides that:

Washington law shall govern the execution and construction of this Trust Agreement. The administration of this trust, however, shall be governed first by the provisions of this Trust Agreement, including any laws incorporated in this Trust Agreement by reference or otherwise made applicable to this Trust Agreement, and second, to the extent consistent with such provisions, the laws of the trust's situs.

In the *inter vivos* context this Court was required to dissect each trust instrument's language to discern the settlor's intent that the law governing administration be able to change.[11] Here, however, it is clear on the face of the Trust Agreement that the settlor expressly "contemplates that the law governing administration will change with the situs of the trust, subject to the requirements of Section 7.2."[12] That is, upon changing the Trust's situs to the State of Delaware, which the trustees may undertake without court approval, the Trust Agreement recognizes that Delaware law will govern the Trust's administration.

The preceding analysis demonstrates that Petitioners or their successor trustee may unilaterally make the changes that they request the Court to approve. For this reason, any grant by the Court of Chancery, or any other Delaware court of the relief requested, would amount to an impermissible advisory opinion. Accordingly, we affirm the Vice Chancellor's denial of the Petitioners' requests that the Court of Chancery (i) approve the resignations of Brian and Jeffrey as trustees; (ii) confirm Northern Trust as the newly appointed trustee; (iii) declare that Delaware is the situs of the Trust; and (iv) declare that Delaware law governs the Trust.

## B. The Vice Chancellor Properly Denied The Requests to Reform the Trust Agreement.

■ Initially, we address Petitioners' contention that it was "unwarranted ... to treat the petition as to the Charitable Lead Unitrust to be seeking 'reformation' and then find it defective for failing to allege facts and reasons meeting the standard for the equitable remedy of reformation."[13] Jeffrey and Brian's use of the term "reform" was, in their own words, "obviously unwise."[14] Petitioners and litigants alike should recognize that how they choose to frame the issues for the court to consider is critical. Although semantic differences occasionally do shape a court's perception of an issue, in this case substituting the word "modify" for "reform," as Petitioners would have us do, would not lead to a different result. In either instance, Petitioners are seeking to invoke the Court of Chancery's equitable powers to change the terms of the Trust Agreement. They must have a legitimate basis for doing so. As an appellate court we may affirm a trial court's judgment on a

---

10.  *Charitable Lead Unitrust,* 59 A.3d at 469.

11.  *In re Peierls Family Inter Vivos Trusts,* 77 A.3d 249, 257–65, 2013 WL 5539329 (Del. 2013).

12.  *Charitable Lead Unitrust,* 59 A.3d at 469.

13.  Opening Br. at 30.

14.  *Id.* at 31.

different basis than that on which the judge decided the case.[15] Rather than rely on the law governing the court's equitable powers of reformation, we shift the focus to the law governing a trust's administration. We do so because the substance of Petitioners' requests for reformation are matters of trust administration.

In our discussion of the Peierls *inter vivos* trusts, we noted that the Court of Chancery's power to reform a trust depends on which state's law governs the administration of the trust.[16] In this instance, we need not march through the *Restatement (Second) of Conflict of Laws* to determine which state's law applies to the administration of this charitable Trust. The reason is that the situs of the Trust has never changed, as it did in those cases. Section 7.2 of the Trust Agreement expressly states that when the situs of the Trust moves, so too does the law governing its administration. The settlor, Ethel Peierls, clearly intended under Section 6.2 of the Trust Agreement that the situs could freely move and that the law governing administration follows under Section 7.2.

On September 12, 1994, Brian and Jeffrey executed a written "Designation of Trust Situs," under to the authority delegated by Section 7.2. In that document, they named the State of Washington as the Trust's situs for "all purposes of its administration." Under Section 7.2 of the Trust Agreement, at the time of that document's execution the Trust's administration became subject to the laws of the State of Washington. Here, the trustees

chose to condition designating Delaware as the situs of the Trust upon a judicial confirmation that never occurred. The designation of Delaware as the Trust's situs is therefore ineffective. At this time, Washington State law continues to govern the Trust's administration.

That being the case, whether or not the Vice Chancellor could reform the Trust Agreement is a matter governed by Washington State law. The Petition fails to address reformation according to the law that actually governs administration of the Trust. The Petitioners asked the Vice Chancellor to rule on a request without citing proper legal authority. We have no doubt, however, that once the trustees effect a proper transfer of the Trust's situs to the State of Delaware (and the accompanying change in the law governing administration under the Trust Agreement), the Court of Chancery will be in a position to reconsider Petitioners' requests for reformation. But, based on the current record and the arguments presented to him, the Vice Chancellor properly concluded that he could not reform the Trust.

## C. The Vice Chancellor Properly Refused to Retain Jurisdiction Over the Trust.

■ Petitioners fail to address whether the Vice Chancellor properly declined to accept jurisdiction over the Trust. We remind Petitioners that, except where the interests of justice compel us, we will consider arguments not raised in an appellant's opening brief as waived.[17] There is

---

**15.** *Unitrin, Inc. v. Am. Gen. Corp.,* 651 A.2d 1361, 1390 (Del.1995) (citation omitted).

**16.** *In re Peierls Family Inter Vivos Trusts,* 77 A.3d 249, 266, 268–69, 2013 WL 5539329 (Del.2013).

**17.** *See Smith v. Delaware State University,* 47 A.3d 472, 479 (Del.2012); *Roca v. E.I. DuPont*

*de Nemours and Co.,* 842 A.2d 1238, 1242 (Del.2004) ("The rules of this Court specifically require an appellant to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief. If an appellant fails to comply with these requirements on a particular issue, the appellant has abandoned that issue on appeal

no compelling reason to address this issue *sua sponte.* We therefore affirm the Vice Chancellor's conclusion that the Court of Chancery could not retain continuing jurisdiction over the Trust. Again, however, once the Trust is properly sitused in Delaware, is under the supervision of a Delaware trustee, and its administration is governed by Delaware law, the Court of Chancery will be able to fully consider whether it can accept jurisdiction over the Trust.

## IV. CONCLUSION

Accordingly, we AFFIRM the decision of the Court of Chancery. Jurisdiction is not retained.